## HALLOCK v. STREETER.

(Circuit Court, N. D. New York. June 19, 1900.)

1. PARTNERSHIP—DISSOLUTION—SETTLEMENT—EQUITY—ACCORD AND SATISFAC-
   TION—OPENING SETTLEMENT.
   On the dissolution of a partnership between a young man and one mature in years, a settlement between them would not be inquired into in equity at the instance of the former, where it appeared that he was possessed of more than average business ability, and that the elder member, though a shrewd business man, resorted to no deception, and there was no mistake of fact, and a positive instrument of accord and satis-faction was executed by them.

2. SAME—DISAGREEMENTS—ACQUIESCENCE—WAIVER.
   In a dispute between partners H. claimed that he was entitled to the interest on capital contributed by him, and to the proceeds of a patent used by the firm, which was his individual property. S. claimed that the same should be equally divided. H. thereupon said to S., "If you think so, I will let it go." Until dissolution such interest and profits were entered on the firm books in equal credits to both, in which H. acquiesced. *Held*, that the conduct of H. amounted to a waiver of his claim, and to a new agreement, and, after full settlement between them, equity would not interfere in favor of H., though by the terms of the original partnership agreement H. might have been entitled to such interest and profits.

Final Hearing in Equity.

Edwin Nottingham, for complainant.
Andrew J. Nellis, for defendant.

COXE, District Judge. This is an action for an accounting, growing out of an agreement made between the parties March 1, 1893, by which they agreed to engage in the manufacture and sale of gloves and mittens at Johnstown, N. Y., for the term of about five years, unless sooner terminated by mutual consent. Without entering into details it is sufficient to say that the defendant was to give his attention to the finances and the complainant to the manufacturing and selling. The business thus started was unusually successful, but in the latter part of 1896 the complainant became anxious to start branches in other states, employing convict labor and introducing other innovations. The defendant, who is older and more conservative, declined to enter these new fields of enterprise, but consented, if the complainant so desired, to terminate the agreement in January, 1897, although he could, of course, have insisted upon its remaining in force until January, 1898. The parties thereupon commenced negotiations for the winding up of the business. Many concessions were made. Positions were taken, maintained for a time and receded from on both sides. The usual debate and contention incident to the winding up of a complicated business followed, but it is impossible to find from the evidence that either party resorted to fraud or duress. It is now said that the contract of settlement was unfair and unilateral in that the complainant was not allowed the full amount due him for interest upon capital and assets contributed by him and also because the defendant was permitted to share in the proceeds of a patent owned individually by the complainant. It ap-

102 F.—13

pears, however, that the facts regarding the interest and the patent were fully understood and discussed by both parties at the time. Several days were spent in negotiations and the complainant's account of his arguments with the defendant demonstrates that he fully understood his rights and strenuously maintained them. The defendant was equally positive and after the matters in controversy had been discussed in their various aspects a final settlement was reached, which, in view of all the facts and circumstances, is probably as fair a settlement as the court could make, even were it now in a position to enter upon an accounting. But conceding for a moment that the settlement is unfair in some aspects there is no rule of equity which authorizes the court to disregard it. This settlement was evidenced by a release in writing, dated January 1, 1897, signed, sealed, acknowledged and delivered by the parties. It is in the following words:

"We, Arthur T. Hallock and George A. Streeter, of the city of Johnstown, New York, do hereby acknowledge and confess, that we have, the one with the other, fully adjusted and settled all and every matter and thing whatsoever, under, in relation to, or in any manner arising out of, the agreement in writing made by and between us, and bearing date the first day of March, 1893, in regard to the manufacture and sale of mittens and gloves, and that each of us is fully released and forever discharged from any and all the covenants and obligations created by, or arising in any manner whatsoever out of the said agreement; and we do hereby, each, for ourselves, and for our respective heirs, executors, administrators and assigns, release, and forever discharge the other, of and from any and all such covenants and obligations, and as well also the respective heirs, executors and administrators of each of us."

A more clear, positive and comprehensive accord and satisfaction can hardly be imagined. This release lies directly across the complainant's path to recovery and until it is avoided the court is not permitted to enter upon the merits of the original controversy. If the parties have settled their differences it is the end of the discussion. The complainant proceeds upon the theory that this final and complete settlement is a trivial and inconsequential matter which can be lightly brushed aside on the ground that it was entered into through a mutual mistake of fact and law, or that it was induced by undue influence, misrepresentation and fraud. It should be noted at the outset that this is not a case where an innocent, ignorant, guileless and confiding youth has been entrapped into an unconscionable agreement by an unprincipled, cunning, overreaching and venerable swindler. The evidence does not warrant this contention. It is not a dispute between the lamb and the wolf. It is true that the complainant is a young man and the defendant is an old man, but the testimony establishes beyond a doubt that the complainant is a young man of more than ordinary activity, brightness and business ability and that he was fully able to cope with the defendant and protect his own interests in any business transaction. The considerations which induce courts to set aside solemn written instruments are all wanting here. Security in business ventures will be at an end if after two intelligent men have agreed upon an adjustment of their differences the court annuls their agreement for no other reason than that one discovers that he might have obtained

better terms if he had insisted with greater vehemence upon what he believed to be his rights, and had relied more upon his own and less upon his adversary's opinion.

Before the court can begin the inquiry as to whether the settlement was wise or unwise from the point of view of the complainant it is necessary to decide the following questions: First: Was the general release induced by the fraud of the defendant? Second: Was it the result of undue influence or duress upon his part? Third: Was it the result of a mutual mistake of fact? Fourth: Was it due to complainant's mistake of law, coupled with inequitable, unfair and deceptive conduct on the part of the defendant? As before stated there is insufficient proof to establish any of these propositions in favor of the complainant. But conceding that the general release were disposed of, the court would still be confronted by the following propositions: First: Is the complainant's construction correct that under the agreement of March, 1893, he alone was entitled to interest upon the profits of the business? Second: If the original instrument bears this construction did not the subsequent oral agreements dividing the profits and crediting interest to each of the parties change the original agreement in this regard? Third: Did not the complainant acquiesce in the division of the interest and waive his claim thereto with full knowledge of the circumstances? Fourth: In view of the manner in which the patent was disposed of did not the proceeds belong to the business? It is by no means certain that the complainant's contention with regard to the latter propositions can be maintained; at least it must be admitted that there are two sides to these questions. That good lawyers can honestly disagree regarding them is mentioned now solely for the purpose of emphasizing the impossibility of imputing fraud or duress to the defendant in maintaining his opinions during the negotiations. That the agreement of 1893 is capable of the interpretation placed upon it by the complainant may well be conceded. Indeed, it may be true that a strict construction compels such an interpretation, but looking at the matter from a broader point of view, and considering the business as a joint and equal venture, it surely seems inequitable that one of the parties at the end should receive $6,000 more than the other. If he had supposed that such was to be the result can it be imagined for a moment that the defendant would have entered upon the undertaking? It is thought that no one can read the agreement, in the light of all the testimony, without being convinced that the parties intended that the profits of the joint enterprise should be equally divided. The manner in which the books were kept, the settlement with Hackney, the conduct of the complainant before and at the settlement, all point to this conclusion. But even were this otherwise, there can be no doubt that the complainant had a perfect right to waive the strict construction and settle upon the more just and equitable basis. He may have thought that it was unfair that he alone should pocket the interest upon profits which resulted from the combined efforts of himself and the defendant. So long as he understood the situation, so long as there was no mistake of law suggested or encouraged by the fraudulent conduct of the defendant,

there can be no ground for setting aside the solemn action of the parties. The testimony fails to show any dishonest act on the part of the defendant. No fact was misrepresented by him; no threat was made; there was no deception. He might with the utmost honesty and good faith have thought that he was entitled to his share of the interest and of the patent and he had a perfect right to insist upon his position with all the vehemence and ability he possessed. It appears that the complainant fully understood the facts and, though he entertained a different opinion as to his rights, he evidently thought, in view of all the circumstances, that it was more to his advantage to yield these points than to have the negotiations terminated or delayed. Even upon his own statement the complainant makes no case for equitable interference. He was asked,

"Did you have a conversation with Mr. Streeter at the time of this settlement with reference to allowing him interest as it had been credited to him on the books?" He replied, "Yes. * * * I told Mr. Streeter in substance that I thought there were some changes that ought to be made in our accounts as they then appeared on the ledger. I called his attention to the fact that I had not been credited with the proceeds of the patent, and that he had received interest on the amounts credited to his stock account; that I didn't think he was entitled to these items, because his compensation, according to the agreement, was not due him until the agreement was terminated. He replied in substance that it was no such thing; that, according to the agreement, he had as much legal right to the interest credits as I had, and that the same amounts had been credited to my account, and that the patent was invented and procured during the agreement with him and was part of the business, and he had just as much legal right to it as I did. I told him in substance that I didn't think that was right, but if he thought it was right and in accordance with the agreement, I would let it go. He replied in substance that it certainly was."

Again he was asked,

"Did you know at that time, whether Mr. Streeter had a legal right to the interest which had been credited to him or to a share in the proceeds of the sale of this patent and invention as though it had been owned by the business carried on under this agreement?" He answered, "I did not know positively, but I thought he did not have a right."

There can be no pretense that the complainant was in ignorance of any material fact regarding the interest or the patent. He knew all the facts as intimately as the defendant. He was not mistaken as to the law. He thought then, as he thinks now, that his construction of the agreement was the correct one. The defendant thought otherwise, as he had a right to think, and expressed his opinion forcibly, but it was only an opinion. It will establish a unique and startling rule in equity jurisprudence if fraud or unfair conduct, sufficient to avoid a contract of settlement deliberately made, can be predicated of a statement by one of the parties that in his opinion he is entitled to the items allowed him upon a settlement. The court has been unable to find an authority of any weight which sustains the advanced position taken by the complainant. No better exposition of the law can be found than that stated by Judge Story. He says,

"It may be safely affirmed, upon the highest authority, as a well-established doctrine, that a mere naked mistake of law, unattended with any such special circumstances as have been above suggested, will furnish no ground for the

interposition of a court of equity; and the present disposition of courts of equity is to narrow, rather than to enlarge, the operation of exceptions," 1 Story, Eq. Jur. (12th Ed.) § 138.

Of the accounts assigned to the defendant, as security for his liability upon a bond and upon certain notes and commercial paper, it is understood that the defendant admits that he has collected the sum of $799.30 belonging to the complainant. The Barter matter is not entirely clear, but it is thought that this item of $50 should be added also, making $849.30. On the other hand the complainant admits that he is indebted to the defendant for goods sold and upon other matters transpiring since the settlement in the sum of $295.49, leaving a balance due the complainant of $553.81, which with interest amounts to $654.31, for which sum the complainant is entitled to a decree. As the complainant has not succeeded upon the principal matters in dispute he is not entitled to costs.