### JENNINGS ET AL. V. RICKARD.

1. The partnership relation is a trust relation, and the members of a copartnership are held to a strict rule of good faith and fair and open dealing. He who assumes the relationship invites the confidence of his copartners and pledges fidelity to the interests of the copartnership.

2. Plaintiff, being a partner with defendants, by the terms of the partnership was to have one-third interest in claims located by defendants. The partnership was dissolved in the spring of 1878. One of the defendants, while prospecting some years prior to 1879, discovered some "float" on the mountain-side, where a valuable mine was afterwards discovered, and stuck a stake there, with a view of returning at some future time and discovering the vein from which it came, but did not return until after 1879. *Held*, that while the failure to pursue the search might have been neglect on his part, it was not fraudulent as of course.

3. The defense of the statute of limitations is in the nature of a special privilege, and, if not specially pleaded, must be treated as waived. It cannot be considered for the first time in this court. Nor can it be considered under the general objection that the complaint does not state facts sufficient to constitute a cause of action.

### *Error to District Court, Fremont County.*

THE defendant in error obtained a decree from the court below for $20,200. The plaintiffs in error, the defendants below, bring the cause to the supreme court by writ of error. The facts of the case are sufficiently stated in the opinion of the court.

Messrs. TELLER and ORAHOOD and J. M. WALDRON, for plaintiffs in error.

Messrs. WELLS, SMITH and MACON, for defendant in error.

ELBERT, J. · Charles Rickard, the plaintiff below, on the 18th of December, 1882, filed his bill of complaint against the defendants, John and Daniel Jennings, claiming a decree against them for $20,200, on account of certain partnership transactions. He alleges that in the fall of 1874 he and the defendants entered into a mining copartnership for the purpose of collecting mineral specimens, and also for the purpose of discovering, locating and developing lodes and mining properties; that by the terms of such copartnership agreement Rickard was to furnish certain moneys, horses, wagons, etc.; that the defendants were to do the active work in the field in prospecting and locating mining claims, and that each were to have a one-third interest in all mining claims discovered and located by the defendants; that this copartnership continued until April, 1878; that during this time the defendants discovered and located the Mammoth, the Empire and the Trail lodes, and a certain claim to coal lands, and reported the same to plaintiff as properties belonging to the copartnership; that they reported the aforesaid lodes as being all that had been discovered, located and claimed by them during the continuance of the copartnership agreement. He alleges that on the 19th of March, 1878, he conveyed to said defendants, for the sum of $400, all his interest in and to the foregoing copartnership properties. Concerning this conveyance of the 19th of March, 1878, he alleges a distinct and separate fraud upon the part of defendants Jennings, by reason of which he is entitled to a decree against them for $200. This fraud concerns properties admittedly belonging to the copartnership, and will be considered first.

Under the terms of the copartnership, the lodes were located for convenience in the names of the defendants, and they were authorized to negotiate and sell them, ac-

counting to plaintiff for one-third of the proceeds. The evidence clearly shows that on or about the 19th of March, 1878, the defendants approached the plaintiff concerning a purchase of his third interest in the foregoing copartnership properties, and that the negotiation resulted in the sale by plaintiff to defendants of his third interest in the same for the sum of $400, which he then and there conveyed by deed of that date to defendants. It also quite clearly appears that at the time of this sale the defendants were negotiating a sale of the copartnership coal claim to one Smith for the sum of $1,800. Although this sale to Smith was not consummated until some time thereafter, the deed to Smith, which was placed in escrow, bears date March 19, 1878, the date of the conveyance by the plaintiff to defendants on his one-third interest in the copartnership properties. The one-third interest of the plaintiff in the proceeds of the sale of this coal mine would have amounted to $600 — $200 more than the defendants paid him for his entire interest in the four claims.

The partnership relation is a trust relation, and the members of a copartnership are held to a strict rule of good faith and fair and open dealing. He who assumes the relation invites the confidence of his copartners, and pledges fidelity to the interests of the copartnership. The requirements of the copartnership relation which the defendants sustained to the plaintiff demanded that, at the time of the negotiation for a sale of his third interest in the copartnership properties, they should have made known to him the negotiation which was then pending with Smith for the sale of the coal claim for the sum of $1,800. Their concealment of this negotiation from the plaintiff was the concealment of an important fact, affecting the value of plaintiff's copartnership interest for which they were negotiating. It enabled them to deal with him on unfair and unequal terms. It was a fraud, and equity and good conscience required that defendants

should account to plaintiff for one-third of the proceeds of that sale.

The sale by plaintiff to defendants of his one-third interest in the copartnership properties, to wit, the Mammoth, the Empire and the Trail lodes, and the coal claim, was a sale in gross for $400. The consideration paid for each property respectively does not appear. As the plaintiff introduced no evidence upon this point, and only prayed in his bill of complaint that the defendants be decreed to account for the sum of $200, the difference between the entire consideration paid him for the whole property and his third interest in the proceeds of the sale of the coal claim, the court was justified in limiting its decree in this behalf to that sum.

*Secondly.* The plaintiff alleges another and distinct fraud respecting certain mining properties, which he claimed belonged to the copartnership, a claim which the defendants contest. Plaintiff alleges that, during the continuance of said copartnership agreement, the defendants discovered and located certain other mining claims, viz., the Cliff, the North Star, the Hiawassee, the Galena, the East Wing, the Buckeye, and the Sylvanite; that under the terms of their copartnership agreement he was entitled to a one-third interest in the same, but that the defendants fraudulently concealed from him the discovery and location of said claims, and that he never knew of the existence of said claims, or of his rights therein, until on or about the 27th day of September, 1879, when the defendants sold and conveyed said claims to one Ballentine for the sum of $60,000. By reason of this fraud upon the part of defendants, the plaintiff claims a decree for $20,000, one-third of the proceeds of said sale to Ballentine.

The defendants, in their answer, deny the copartnership, except as thereinafter stated, and "thereinafter" they say "that they, the defendants, further answering, admit that they entered into an agreement with plaintiff

to gather specimens and prospect for lodes, substantially as set out in the complaint, and that such agreement continued until the early part of the year 1878." They set forth the sale and deed of the 19th of March, 1878, by plaintiff to defendants, and say "that, upon the completion of such sale by plaintiff to defendants, it was then and there agreed by and between them that all former associations, agreement, copartnership and business relations theretofore existing between plaintiff and these defendants should cease, and the same were then and there fully dissolved and terminated." In view of the testimony, as will be seen, this is an important admission. They deny any fraudulent concealment of lodes discovered and located as alleged in the complaint, but claim that the Mammoth, the Empire, the Trail lodes, and the claim to coal lands, reported by them to plaintiff as copartnership properties, were all the lodes discovered and located by them during the continuance of the copartnership, from the fall of 1874 to the spring of 1878.

Upon the admissions of the defendants in their answer and testimony, the Cliff, the Hiawassee, the Galena and the North Star must be treated, without hesitancy, as properties belonging to the copartnership. The defendants, in their answer, admit that the copartnership formed in 1874 continued until the spring of 1878. The copartnership must be treated as extending to all mining properties discovered and located by the defendants during that period, in the absence of any limitation. John Jennings admits in his testimony that the four lodes named were discovered and located in 1876 and 1877. The defendant, Daniel Jennings, while he does not testify upon this point, does not in any way controvert or disclaim it. It is true that they both claim in their testimony that they understood that the copartnership was dissolved in the spring of 1876, when the copartnership "specimen store" was sold; but this testimony does not support the allegations of the answer, the admissions of which, upon this point, must be held to control.

It appears from the testimony that these four mines belonged to the group of ten which were sold to Ballentine for the sum of $12,000. There is no evidence fixing the separate value of the mines which constitute this group. In the absence of any evidence upon this point, the respective mines constituting the group must be treated of equal value. In so far, therefore, as the decree of the court below was based upon the right of the plaintiff to recover one-third of the proceeds arising from the sale of the Cliff, the Hiawassee, the North Star and the Galena is concerned, we think it is justified by the pleadings and the evidence.

It appears that three other mines which plaintiff claims belong to the copartnership, viz., the Sylvanite, the Buckeye, and the East Wing, were at the same time, namely, on the 27th of September, 1879, conveyed to Ballentine by a separate deed, and that the true consideration therefor was $48,000. This sum, together with the $12,000 for which the other group sold, constitutes the $60,000, for the one-third of which plaintiff claims a decree.

It remains, therefore, to determine whether, upon the evidence, these three mines belonged to the copartnership. The two Jennings and other witnesses testify positively to their discovery and location in 1879, after the copartnership had been admittedly dissolved. It appears that the Sylvanite was by far the most valuable of the three; that the other two were not regarded as of much value. There was an effort upon the part of the plaintiff to show that, while the Sylvanite was not located until 1879, it was really discovered by the Jennings during the existence of the copartnership, and its discovery fraudulently concealed from the plaintiff. Daniel Jennings admits in his testimony that some years prior to 1879, while prospecting, he discovered some "float" upon the mountain-side some four or five hundred feet from where the Sylvanite was afterwards discovered, and that he stuck a stake there to indicate the

locality, with a view of returning at some future day to prospect for the vein from which it came, but that he never did return to renew his search until 1879. Other witnesses testify to substantially the same admission on his part. At the worst, this was but a neglect upon his part to pursue a search that might have terminated beneficially to the copartnership. His failure to do so, however, does not appear to have been fraudulent. It is not shown that, at the time he stuck the stake where he found the "float," he discovered the vein from which it came, or that he had any knowledge respecting it that would render his failure to make further search for the mine fraudulent. Such and other indications of the existence of mineral veins are frequent in the path of the prospector. All that can be required of him is that he pursue his search with diligence and good faith. His failure to follow up a particular "float," or other indication of a lode, is not a fraud as of course. It will not do to say, under the circumstances of this case, that Jennings, after the dissolution of the copartnership, could not return to and prospect in Elk Mountain district for other lodes, except at the peril of having to yield to plaintiff a one-third interest in their discoveries, upon the proposition that by proper diligence they might have discovered such lodes during the existence of the copartnership. The evidence does not show the fraudulent concealment of a discovery, as in the case of the other group of mines.

In so far, therefore, as the decree of the court below was based upon the rights of the plaintiff to recover one-third of the proceeds arising from the sale of these three mines, we do not think it justified by the evidence.

The argument that the action is barred by the statute of limitations cannot be considered. The objection is taken for the first time in this court. The defense was not interposed in the court below, by either demurrer or answer. This defense is in the nature of a special privilege, and if not specially pleaded must be treated as

waived. It cannot be considered under the general objection that the complaint does not state facts sufficient to constitute a cause of action. *Hexter v. Clifford,* 5 Colo. 173; *Chivington v. Colorado Springs Co.* 9 Colo. 600.

The decree of the court below is reversed and the cause remanded.

*Reversed.*