[No. 6525.  Decided March 26, 1907.]

W. A. Finn, *Appellant*, v. C. W. Young, *Respondent.*[1]

PARTNERSHIP — ACTIONS BETWEEN PARTNERS — FRAUD — SALES OF PARTNERSHIP PROPERTY.' In an action between partners for damages for fraud in the sale of partnership property, defendant is liable where, after giving an option on the property and learning from the purchaser that the sale would be consummated, he concealed and misrepresented the amount of the consideration, and stated to the plaintiff that the sale had probably fallen through, and bought out the plaintiff's interests for a much less sum in the name of a friend, on representations that he wished to put more money in the business, which plaintiff was unable to do, agreeing to pay $500 additional if the sale should be made; although after the sale the plaintiff received the $500, without knowledge of the true consideration; since the utmost good faith must be observed between partners.

SAME—EVIDENCE OF DAMAGES. In an action between partners for fraud in the concealment of the consideration received in the sale of partnership property, evidence that the property sold for $35,000, and that the credits due were equal to the debts, is sufficient to show the plaintiff's damages in parting from his interest for a less sum.

Appeal from a judgment of the superior court for King county, Albertson, J., entered May 18, 1906, granting a nonsuit at the close of plaintiff's case, in an action between partners for fraudulent representations inducing a sale of partnership property. Reversed.

*Fenton & Crews, M. C. Brown,* and *J. R. Poland,* for appellant.

*Peters & Powell,* for respondent.

MOUNT, J.—At the close of plaintiff's evidence, the trial court granted a nonsuit in this case upon motion of the defendant, and dismissed the action. The plaintiff appeals.

The errors assigned are based upon the ruling on the motion for nonsuit. The evidence on the part of the plain-

[1]Reported in 89 Pac. 400.

tiff shows that, for two or three years prior to 1901, plaintiff and defendant were equal partners, owning a sawmill and other property at Shakan, in the territory of Alaska. The plaintiff resided at Shakan and conducted the business. The defendant spent most of his time in Juneau, Alaska, and Seattle, Washington. In the summer of 1901 both parties concluded that they would sell their interests at Shakan. In August of that year the defendant, Mr. Young, met one J. D. Carroll in Seattle. Mr. Carroll was at that time looking for a location for a fish cannery in Alaska. Mr. Young gave Mr. Carroll a letter of introduction to the plaintiff at Shakan. Mr. Carroll then went to Shakan and met the plaintiff, and after examining the property belonging to the partnership and being satisfied with the location, entered into an optional agreement with the plaintiff to purchase the sawmill and fixtures and equipment, the site, and store and other buildings, for a consideration of $20,000, and in addition, to pay for merchandise, lumber, and sawlogs on hand at the invoice price thereof. This agreement was to be presented by Mr. Carroll to the defendant at Seattle, and was not to become binding unless approved by the defendant. Mr. Carroll thereupon returned to Seattle and presented the agreement to the defendant, who refused to approve it. At the defendant's request, Mr. Carroll then sent a letter to the plaintiff, informing him that defendant would not approve the contract. This letter was also signed by the defendant.

A few days later, viz., on September 5, 1901, the defendant entered into a contract with Mr. Carroll agreeing to sell the property to him at $25,000, and in addition thereto, the invoice price of merchandise, lumber, and logs on hand. The option was to extend ninety days from the date of the contract. Six thousand dollars of the purchase price was to be taken in shares of a company which Mr. Carroll proposed to organize. Thereupon Mr. Carroll went to Minnesota and organized a corporation for the purpose of

taking over the property described in the contract. He kept the defendant advised of his progress and, after the organization of the company, informed the defendant that the company would be ready to make the payments within the time specified in the contract with defendant. The plaintiff was not informed of these transactions after the letter was sent to him by Mr. Carroll as above stated.

Thereafter, in the latter part of October, the defendant went to Shakan, and then for the first time informed the plaintiff that he had entered into a contract with Mr. Carroll, but informed the plaintiff that the terms of this contract were the same as the one he had refused at first to accept, with the exception that the defendant had given Mr. Carroll ninety days' time and had agreed to take $6,000 of the purchase price in stock. The defendant also stated to the plaintiff that sixty days of that time had already elapsed, and that he had heard nothing from Mr. Carroll; that Mr. Carroll was an adventurer and, in his opinion, would not be able to take up the option. Defendant also stated to the plaintiff that he had concluded not to sell the property, but desired to enlarge the same, and that since the plaintiff had no money to meet the expenses of improvements, defendant had decided to purchase the interest of plaintiff for a friend in Seattle. Defendant then offered plaintiff $10,000 for his interest. Plaintiff at first refused, for the reason that Mr. Carroll's option had not then expired, and that his share would amount to more than that sum if Mr. Carroll took the property. Thereupon defendant agreed that if Mr. Carroll took the property, he would pay plaintiff $500 additional. Plaintiff, relying upon the statements made by defendant, that the option with Mr. Carroll was for $20,000, and that $6,000 thereof was to be paid in stock, accepted the offer of $10,000, and transferred his interest to the defendant. Within the ninety days, Mr. Carroll returned to Shakan and took over the property at $25,000, and the invoice price of merchandise, lumber, and logs, which

amounted to $10,000 more, making $35,000 in all. Before Mr. Carroll had an opportunity to see the plaintiff, the defendant requested him to say nothing to plaintiff as to the terms of the sale. When the transfer had been made to Carroll and his associates, the defendant paid to plaintiff the $500 as agreed in case Carroll should take up the option. The plaintiff did not learn of the actual consideration passing fom Carroll to the defendant until about four years later, when this action was begun for the difference between $10,500 and $17,500, one-half of the purchase price from Carroll to the defendant.

Upon these facts, which we must consider as true, we do not hesitate to say that the trial court erred in granting a nonsuit and taking the case from the jury. The rule is that partners must observe the utmost good faith towards each other in all their transactions.

"The same rules and tests are to be applied to the conduct of partners as are ordinarily applicable to that of trustees and agents." 22 Am. & Eng. Ency. Law (2d ed.), p. 115.

"A sale by one partner to another of his partnership interest will not be sustained unless made for a fair consideration and upon full disclosure by the vendee to the vendor of whatever information he has as to the value of such property; and concealment of a material fact by the party whose duty it is to disclose it is sufficient to annul the compact." 22 Am. & Eng. Ency. Law (2d ed.), p. 105.

See, also, *Caldwell v. Davis*, 10 Colo. 481, 15 Pac. 696, 3 Am. St. 599; *Jennings v. Rickard*, 10 Colo. 395, 15 Pac. 677; *Wright v. Duke*, 36 N. Y. Supp. 853. It was the duty of the respondent to fully inform the appellant of his contract with Carroll, and of the fact that Carroll would, within the ninety days, take up the option and pay the purchase price of $35,000. He did not do so, but deceived the appellant into the belief that Carroll would be unable to take the property.

Respondent argues that, because the appellant took the $500 from the respondent after Carroll had paid the money

to respondent, appellant then must have known that Carroll had taken up the option. This is true, but at that time the appellant did not know the amount of money the respondent had received. He then knew only what his partner had previously told him, viz., that the purchase price was $20,000, less $6,000 in stock and plus the invoice value of the merchandise, lumber, and logs, which up to that time had not been taken or estimated, but which was found to amount to $10,000. If this had been the actual consideration which respondent received from Carroll, there would be much force in respondent's contention, but when it is conceded that this was not the actual consideration, but that the contract and payment was $35,000, respondent's position utterly fails, because the difference between the actual facts and the represented facts is the difference between good faith and fraud. Respondent attempts to sustain the judgment upon the ground that there is no evidence to show that appellant's interests were worth more than the $10,500 which he received. It was shown that the property was sold for $35,000, and that the credits due the corporation were equal to the debts. This was sufficient to show the damages claimed.

The judgment is reversed and the cause remanded for a new trial.

HADLEY, C. J., DUNBAR, CROW, and FULLERTON, JJ., concur.