[No. 12264. Department One. May 14, 1915.]

# R. L. T. GALBRAITH, *Respondent*, v. A. J. DEVLIN *et al.*, *Appellants*.[1]

PLEADING—SURPLUSAGE—TRIAL—OPENING STATEMENT OF COUNSEL. The fact that plaintiff's complaint and the opening statement of his counsel overstated his case, would not preclude his right of recovery if there were any facts and any theory upon which he was entitled to recover.

PARTNERSHIP—EXISTENCE OF RELATION—SHARING EXPENSES. Where parties entered into a joint venture, upon the understanding that each should pay an equal amount of all the expenses incident to the venture, the conclusion necessarily follows that they would share equally in all the proceeds of the enterprise as partners.

PARTNERSHIP—GOOD FAITH BETWEEN PARTNERS. Where partners in a group of coal mining claims procured an option on the interest of another partner by falsely representing that they could make a sale at a certain price, concealing from him the situation of affairs probably insuring the realization of a better price for which the sale was in fact made, it is such a fraud as against the partner giving the option as to entitle him to recover his proportionate share of the purchase price which he had not received.

EQUITY—CLEAN HANDS—DIFFERENT TRANSACTIONS. There is no foundation for the contention that plaintiff had not come into court with clean hands, when he sought to enforce his equities against the fraud of his partners, on account of misrepresentations made by him to an attorney who was to have an interest in the partnership claims in consideration of services, when the attorney was not in court complaining of plaintiff, and, in fact, had been satisfied to accept a settlement on the basis of representations made to him by other members of the partnership.

Appeal from a judgment of the superior court for Spo-kane county, Kennan, J., entered May 29, 1914, upon findings in favor of the plaintiff, in an action for equitable relief, tried to the court. Affirmed.

*Robertson & Miller, Post, Avery & Higgins*, and *John P. Gray*, for appellants.

*Cannon, Ferris & Swan*, for respondent.

[1]Reported in 148 Pac. 589.

HOLCOMB, J.—By this appeal we are called upon to review a judgment in equity, in an action by respondent against appellants to recover one-fifth of the stock of the Corbin Coal & Coke Company which stands of record in the name of the appellants, and one-fifth of a certain sum of money received by appellants in addition to that which was paid to respondent for the sale of seventeen coal claims, known as the Langley group, located in the Flathead country, in the Kootenai district, British Columbia. A decree was granted respondent as prayed for.

The material and substantial allegations of the respondent's complaint, and which he produced evidence tending to support, were briefly as follows: It is alleged that the appellants and the respondent and William J. Langley and Judson B. Langley were partners in the ownership of possessory rights to fourteen coal claims in the province of British Columbia; that adjoining these claims were three others, located by George M. Judd, James D. Gordon and A. W. Vowell, who were friends and acquaintances of respondent and the Langleys, and that Judd, Gordon and Vowell were not members of the partnership, and the partnership had no interest in their claims. It is alleged, also, that one J. A. Harvey, an attorney, was employed to do the legal business for the partners, and it was agreed that he should be secured by an interest in the claims.

The representations of fraud are contained in the seventh paragraph of the complaint. It is therein alleged that, in December, 1904, the partners gave an option to Phillips & McClain to sell said coal claims for approximately $450,000, and, at the time of the doing of the matters and things hereinafter complained of, Phillips & McClain held the option; that, in June, 1905, appellants learned that one D. C. Corbin was in search of coal property in said district, and entered into a fraudulent scheme and plan of gaining possession of the property for the purpose of disposing thereof to Corbin, but concealed their plans and purposes, and in order to carry

out their purpose, refused to renew their option to Phillips & McClain, which was then about to expire, and did expire early in July, 1905; and they thereafter represented to respondent, appellant Devlin being spokesman, that D. C. Corbin would purchase the property for the sum of $75,000 in cash, that it would take approximately $12,500 to secure the interests of Judd, Gordon and Vowell, and to pay Harvey for his services, and that there would remain $12,500 for each of the partners; that Corbin would not allow the respondent or any of the partners to retain any interest in the property, and that the appellants advised the acceptance of that sum; and further requested the respondent to execute to Page an option with reference to the transfer of the interest of the respondent to Page, stating that this was necessary for the reason that the leases from the government to certain of said property stood in the name of the respondent and his sister-in-law; and further that Devlin stated that he and Page had agreed to take $12,500 each, that each of the Langleys had agreed to take the same sum, and that said offer was the best that could be secured; that the respondent finally agreed to, and did, execute the option to Page for the purpose of transferring the interest which respondent appeared to have, and did have, in the property to the purchaser, and thereafter executed such assignments and other documents as were requested in order to enable Page to convey the title to the property; that the other persons in whose names the claims stood, either themselves or by attorney in fact, executed options, and thereafter such other papers as were necessary.

It is alleged that, on or about October 8, 1905, respondent received the money named in the option, to wit, $12,500, and that on April 15, 1912, respondent was informed by William J. Langley that D. C. Corbin paid for the possessory rights to the seventeen coal claims the sum of $100,000, and formed a company called "Corbin Coal & Coke Company," to take title to the claims, and delivered to these appellants

one-tenth of the capital stock thereof, without any other consideration and in pursuance of the original agreement made with Corbin, and that the deal with Corbin was concealed from the respondent by the appellants, and respondent had no knowledge thereof until thus informed by Langley.

The answer denies the allegations of the complaint relating to the charge of fraudulent misrepresentations or concealment and the allegation as to partnership. It admits that, in July, 1905, appellant Page obtained several options or contracts for the purchase by him of seventeen coal claims, one from each owner thereof, and admits that he sold the coal claims to D. C. Corbin for $100,000, and that a part of the consideration was the promise of Corbin that he would form a corporation to take title to said property and would cause to be delivered to the appellants one-tenth of the coal stock thereof; it being agreed, however, at the time, that the appellants should take charge of the property between the time of the sale and the formation of the corporation, and superintend the development and advance moneys therefor, without making any charge for any services to be rendered, and when it should be decided to build a railroad to said property, which was absolutely necessary to make the same of any value, that the appellants should advance their *pro rata* share of all expenses; that the corporation was formed in the year 1909, and said stock was delivered to appellants, was placed of record in their names on the books of the corporation, and has ever since so stood in their names; and that appellants advanced about $7,000 for the development of the mining claims before the formation of the corporation, and advanced for the building of the railroad the sum of $47,000.

The answer also alleges that, in July, 1905, appellant Page obtained from the respondent a written option for the purchase of the coal claims of himself and of his sister-in-law, for the sum of $12,500, which, in the condition the claims then stood, was as much as the market value thereof; that

he exercised his right under said option and in October, 1905, paid the consideration therefor, and obtained a conveyance from respondent in accordance with the terms of the option; that he sold the coal claims to Corbin under the agreement heretofore mentioned; that the stock was placed in the names of the appellants, and no attempt ever made to conceal their interest. There are also some allegations as to a conspiracy between respondent and the two Langleys for the purpose of recovering a portion of the profits which the appellants had received from the sale of the coal claims, and also an allegation that the respondent did not come into court with clean hands, had not offered to do equity, had been guilty of laches, and that his claim was barred by the statute of limitations and the statute of frauds.

There is a further contention by appellants, upon the opening statement of counsel, that the respondent's charge in theory, as set forth in the complaint and the opening statement of his counsel, had not been sustained, in that it was stated by counsel in his opening that the appellants had tentatively arranged with Mr. Corbin to sell the property to him for a consideration of $100,000 and one-tenth of the stock of the corporation to be formed, and that the appellants had misrepresented the arrangement to the respondent and the two Langleys, and as a result of such misrepresentation had obtained from the parties written options running to the appellant Page, which were in fact not options, but merely powers of attorney authorizing conveyances to Corbin. As to this, the court found that, at the time of the giving of the options, there had not been any arrangement or understanding with Mr. Corbin in respect to these claims, and he had not seen the same or negotiated for the same, and did not at the time have any interest, direct or indirect, in the securing of the options; that the negotiations with Corbin in respect to the property were made after July 31, 1905, and were carried on for some time thereafter, and not completed until in October, 1905; that the representations to secure

the options were made, if at all, on July 21, 1905. It may be that respondent's counsel in his opening statement overstated his case. It may even be that the representations contained in the complaint overstated the case. That often occurs in the practice. But in neither case does it necessarily follow that the party should be denied the right of recovery if there are any facts and any theory upon which he is entitled to recover.

I. The principal proposition necessary to be first established in order that respondent might be entitled to recover was that of partnership. The allegation of partnership between these parties was denied by appellants. The evidence, however, is abundant and thoroughly establishes that they were partners; that is, that they entered into a joint venture, and understood and acted upon the understanding that each of the parties should pay an equal amount, to wit, one-fifth of all the expenses incident to the venture; and the conclusion would necessarily follow that they would share equally in all the proceeds of the enterprise. The status of the parties being thus fixed, the law applying is, of course, well settled. Any one of the partners would have the right to purchase the interest of any of the other partners and acquire the same for himself. If it fortunately occurred that he was able to sell at a considerable profit very shortly, without any previous arrangement having been made therefor, his selling partners would have no right to complain. There is a case entitled *Dunne v. English*, 18 Eng. Eq. 524, cited in Lindley on Partnership (2d Am. ed.), p. 712, as follows:

"The plaintiff and the defendant had agreed to buy a mine for £50,000, with a view to resell it at a profit. It was ultimately arranged that the defendant should sell it to certain persons for £60,000, and that the profit of £10,000 should be equally divided between the plaintiff and the defendant. The defendant, however, in fact sold the mine for much more than £60,000, to a company in which he himself had a large interest. The plaintiff was held entitled to one-half of the whole profit made by the resale."

The author then continues:

"There was in this case some evidence that the plaintiff knew that the defendant had some interest in the purchase beyond his share of the known profit of £10,000; but the plaintiff did not know what that interest was, and the real truth was concealed from him. It was held that the defendant being the plaintiff's partner, and expressly intrusted with the conduct of the sale, was bound fully to disclose the real facts to the plaintiff, and not having done so, could not exclude him from his share of the profits which the defendant realized by the sale."

Story, Partnership (7th ed.), § 172, states the rule concerning the relation of partners to each other as follows:

"Good faith not only requires that every partner should not make any false representation to his partners, but also that he should abstain from all concealments which may be injurious to the partnership business. If, therefore, any partner is guilty of any such concealment, and derives a private benefit therefrom, he will be compelled in equity to account therefor to the partnership. Upon the like ground, where one partner, who exclusively superintended the accounts of the concern, had agreed to purchase the share of his copartners in the business for a sum which he knew, from the accounts in his possession, but which he concealed from them, to be for an inadequate consideration, the bargain was set aside in equity, as a constructive fraud, for he could not in fairness deal with the other partners for their share of the profits of the concern without putting them in possession of all the information which he himself had with respect to the state of the accounts and the value of the concern."

These principles are sustained in substance by all the text writers and by the courts, with great unanimity. They were applied by this court in *Finn v. Young*, 46 Wash. 74, 89 Pac. 400; Id., 50 Wash. 543, 97 Pac. 741; *Causten v. Barnette*, 49 Wash. 659, 96 Pac. 225, and *Salhinger v. Salhinger*, 56 Wash. 134, 105 Pac. 236.

II.    Such being the established status of the parties, the question arises whether or not there was any violation of the duty of the appellants to fully disclose to the respondent all

the information in their possession. The appellants' position seems to be that, notwithstanding these well known and well settled principles of law concerning the rights and relations of partners as such and toward each other, there was no deceit practiced upon the respondent by the appellants; that they simply procured his option for the sale of his claim for the smallest sum they could procure it, and thereafter sold it for as large a sum as they could secure. It is true that the person to whom they sold, a Mr. Roberts, stated that he had no previous arrangement with appellants to buy the property, or pay a certain price for it, or buy it for Mr. Corbin, prior to July 21, 1905. The evidence, however, is that Roberts was a railroad and mining engineer and mine manager, and was at the time constructing a railroad for Mr. Corbin, running from Spokane to somewhere in the direction of these coal locations; that Mr. Roberts and Mr. Corbin had previously been associated together in the building of a railroad, and Mr. Roberts was known to be one in whom Mr. Corbin placed great reliance; that Mr. Roberts had, a short time before the option was secured, been in that locality looking at a group of coal claims called the McInnes group; that when this was discovered, the appellants sought to interest Roberts in their group, claiming that their group was a better one than the McInnes group; and they undoubtedly believed that Mr. Roberts was acting for the benefit of Mr. Corbin. There is evidence that on July 21, 1905, Devlin went to respondent to secure his option; that W. J. Langley was with Devlin; that Devlin told respondent they thought they had sold the mine to Mr. Corbin, and that the price to be received was $75,000. There was no particular need, if no price had been agreed upon at all, for them to mention any price to Mr. Galbraith. If no price had been agreed upon, the statement that $75,000 was to be paid was itself false. If they were to receive but $75,000, and it being established that Galbraith was a partner owning a one-fifth interest in the group, then of course Galbraith's interest in the

proceeds would be $12,500. It was upon these representations he testified that he agreed that he would take $12,500, and executed his option therefor, the option running to Page.

While the appellants deny that these statements were made to the respondent at that time or at all, the trial court evidently believed the statements of Galbraith and W. J. Langley, and though there may be a greater number of witnesses testifying to the contrary, while the trial court had the opportunity and advantage of having the witnesses before him and of being able to judge of their credibility by their actions and demeanor as well as by their testimony, we have nothing by which we can determine that Galbraith and Langley should not be believed and that the other witnesses should be believed. In other words, upon that question of fact we cannot determine that the evidence positively preponderates against the findings of the court. If, then, these two propositions are established, (1) that there was a partnership existing between the parties, and (2) that the appellants misrepresented and concealed the conditions existing at the time they secured the option from the respondent, it would seem clear that the respondent was entitled to recover any part of his share of the purchase price of the property which he had not received.

III. The appellants urge further that the respondent did not come into court with clean hands, and therefore is entitled to no equity in the premises. This contention seems to be based upon the fact that the respondent himself caused some misrepresentation to be made to James A. Harvey, the attorney who represented the partnership in perfecting the title to the coal claims and who had been given an interest in the claims therefor. One trouble with this contention is that Harvey is not here complaining of the act of the respondent, and another answer to it is that Harvey himself testified that Devlin and, he thinks, William J. Langley came to him and represented to him that they were getting a much less price than they had anticipated getting, and that while $5,000

would not represent one-eighth of what they were getting, they thought Harvey should take that sum inasmuch as they had a lot of other expenses outside; and that he therefore concluded to take the $5,000 in settlement of his interest. If Harvey was satisfied, no one else can complain for him.

We cannot say that the evidence does not preponderate in favor of the court's findings. Such being the case, the conclusions of law and decree naturally followed. The decree is therefore affirmed.

MORRIS, C. J., CHADWICK, PARKER, and MOUNT, JJ., concur.