[No. 12975.  Department One.  July 21, 1916.]

## A. S. ELMORE, *Respondent*, v. HUGH McCONAGHY, *Appellant*.[1]

PARTNERSHIP—DISSOLUTION—AGREEMENT—ACCOUNTING—FRAUD.  In
the absence of fraud, overreaching, undue influence, or reliance on
fiduciary relations, the dissolution of a partnership by mutual agree-
ment whereby one partner, dealing at arm's length, bought out the
other partner, will not be set aside and an accounting had, on the
allegation that books of account equally accessible to both parties,
were not accurately kept; but there must be clear and satisfactory
proof of specific acts of fraud or particular mistakes; nor is it
enough that reliance was placed upon an inventory compiled by a
bookkeeper employed by both parties.

PARTNERSHIP—DISSOLUTION—ACCOUNTING.  A partnership dissolu-
tion agreement entitling a partner to credits on the loss of five sep-
arate items will not be enforced by an accounting where no complete
adjustment could be had of those matters owing to their unfinished
nature.

Appeal from a judgment of the superior court for King
county, E. P. Whiting, judge *pro tempore*, entered December
15, 1914, upon findings in favor of the plaintiff, in an action
on contract, tried to the court.  Affirmed.

*William R. Bell* and *Smith, Foster & Worthington*, for ap-
pellant.

*E. E. Simpson* and *B. B. Moser*, for respondent.

FULLERTON, J.—The plaintiff, A. S. Elmore, and the de-
fendant, Hugh McConaghy, formed a copartnership as coal
dealers in the year 1909.  On June 30, 1913, they dissolved
partnership by agreement, McConaghy buying out Elmore's
interest for $2,600, paying $600 in cash, and giving twenty
promissory notes for $100 each, dated August 22, 1913,
bearing six per cent interest until paid, the notes maturing
monthly in a series running from one to twenty months after
date.  After seven of these monthly notes had been paid,

[1]Reported in 159 Pac. 108.

McConaghy refused to make further payments until a readjustment of their prior settlement should be had. Elmore brought this action to recover upon the four notes maturing eight, nine, ten and eleven months, respectively, after date. The complaint was in the ordinary form of an action on promissory notes, praying judgment for the face of the notes, with interest and reasonable attorney's fees.

The answer, by way of affirmative defense and counterclaim, set up that McConaghy, in the year 1909, was conducting a coal business as sole trader, and that he and Elmore entered into a partnership agreement by which the latter was to acquire a half interest in the business and pay for same out of such of his share of the profits as was left after the members had each drawn down $100 per month out of the proceeds of the business; that, at the time of dissolution, Elmore had not paid any portion of the purchase price of his half interest in the business; that, on June 30, 1913, McConaghy agreed to buy Elmore's interest, which, from a statement prepared by Elmore from the books of the firm, appeared to be of the value of $2,600; that McConaghy, reposing confidence in Elmore as a bookkeeper and accountant and as a partner in the business, and relying upon the correctness of the written statement, purchased his one-half interest for $2,600, paying $600 in cash and executing twenty promissory notes of $100 each for the balance; that, at the date of settlement, there was a large number of bills and accounts receivable included in the valuation which were considered worth face value, but it was agreed between the parties that, if any of said accounts were uncollectible, one-half thereof should be paid by Elmore or credited upon the notes; and that there were expenses and costs of pending partnership litigation which it was agreed should be paid share and share alike. It was further alleged that, after the dissolution, it was discovered that Elmore had drawn from the firm the sum of $1,500 in excess of the amounts accounted for and credited by him; that, during the copartnership, Elmore

had full charge of the books of account and handled all the
cash, and whatever knowledge McConaghy had of these mat-
ters was acquired from him; that, at the time of the dissolu-
tion, no accounting was had, but the notes were given with
the understanding that a further accounting should be had
and the partnership matters adjusted according to the re-
spective rights of the parties; and that one-half of the un-
collectible accounts, of the expenses of litigation, and the
shortage of Elmore as shown by the books, exceeds the
amount of all the notes still held by Elmore. That after the
discovery of the discrepancies between the accounts and
Elmore's statement on which the settlement was made, Mc-
Conaghy frequently requested Elmore to meet him and adjust
all matters of difference between them, which Elmore has
neglected and refused to do, and that there is no way to pro-
tect the rights and adjust the differences of the parties ex-
cept by a full and complete accounting covering a period of
about five years; and the prayer was for an order of account-
ing, so that there should be a full, complete and just settle-
ment of the differences between the parties.

The reply, after denying all the material allegations of
the counterclaim, set up affirmatively that the agreement for
the purchase by McConaghy of Elmore's interest was evi-
denced by a bill of sale, as set out in defendant's bill of par-
ticulars; that two notes had been placed in escrow as security
pending settlement of five separate items (the Travis, Craib,
Merriam and Turner accounts, and a suit of R. E. McCon-
aghy v. McConaghy & Elmore); that no other agreement
was made between the parties at the time of the transfer of
the business; that, prior to closing the transaction between
them, Elmore employed an expert accountant to audit the
books, but defendant refused to permit this to be done; that,
subsequent to that time, settlement was made between them
after a full and complete investigation and understanding of
all partnership matters; that, for four years prior to the

sale of his interest, Elmore was not in charge of the books, but that they were kept by bookkeepers employed by the firm; that, for more than one year last past, the partnership books were kept by one Harlow, who is now in the employ of McConaghy and who compiled all the figures at the time of the sale; that McConaghy has made no effort to collect the five items above referred to; and that the partnership was terminated by mutual consent July 1, 1913, and that, on the 22d day of August following, a notice of dissolution was signed by both parties.

The trial judge rendered judgment for plaintiff on the four notes sued on for $400, together with interest, and $100 attorney's fees. He denied the cross-complaint for an accounting, without prejudice to any claim defendant might have by reason of the five accounts referred to as the F. F. Travis, McConaghy v. McConaghy & Elmore, J. L. Craib, F. F. Merriman and Homer Turner accounts, which had been agreed upon by the parties at the time of final settlement as subject to future adjustment. From this judgment, defendant appeals.

It is our opinion that the court reached a correct conclusion upon the facts. There is no proof of fraud, overreaching, undue influence or reliance on fiduciary relations. Both parties were intelligent business men in full possession of all their faculties. The affairs of the firm were equally open to both for inspection and an investigation of the books would have disclosed the discrepancies that are now put forward as a basis for asking an accounting. Whatever fiduciary relation was imposed on the partners toward each other during the continuance of the partnership, the relation ceased when they began to negotiate between themselves as to the price to be paid by one for the other's interest. They were then dealing with each other at arm's length, in the absence of any circumstance showing that the complaining party was not *sui juris*, or had a right to rely upon the other. The

allegation of trust in one who had been a partner is not sufficient to overthrow a solemn agreement entered into after each had bargained with the other to get the most advantage possible for himself from the agreement. The appellant asserts now that the books of account were not accurately kept and that, in consequence, he has got the worst of the bargain, and he asks the court to revise his contract. But he had equal opportunity with his partner to know the exact condition of the business when he bought out the latter, and his failure to improve the opportunity was negligence. "If both had equal facilities for investigation, relief will not be lightly granted, if at all, for mistakes arising from negligence." 2 Bates, Partnership, § 960; *Quinlan v. Keiser*, 66 Mo. 603; *Hamilton v. Wells*, 182 Ill. 144, 52 N. E. 143.

It is undoubtedly true that fraud or mistake in a settlement between partners is a sufficient ground to set it aside and retake the entire account. And sometimes a partnership settlement will be opened for error for the purpose of surcharging, and for falsifying the account. But before reopening such a settlement, whether for fraud or mistake, specific acts of fraud or particular mistakes must be shown (*Merriwether v. Hardeman*, 51 Tex. 436); and the proof must be clear and satisfactory. *Powell v. Heisler*, 16 Ore. 412, 19 Pac. 109; *Hoyt v. McLaughlin*, 52 Wis. 280, 8 N. W. 889; *Mahnke v. Neale*, 23 W. Va. 57. McConaghy's chief ground for overthrowing the settlement is that he relied upon the inventory compiled by the bookkeeper, which had been indorsed by Elmore as correct. This is not sufficient, unless there was collusion between the bookkeeper and Elmore, and none such was shown.

"The question being whether one partner was induced to pay a certain price for the interest of his copartner by false representations of the latter, if the seller made such statements solely on information derived from a clerk of both of them, and the purchaser knew that such was the case, the falseness of such statements would not avoid the trade, if

the seller correctly reported them as received from the clerk."
*Hunt v. Hardwick & Co.,* 68 Ga. 100 (Syllabus).

See, also, *Scheuer v. Berringer,* 102 Ala. 216, 14 South.
640; *Little v. Little,* 2 N. D. 175, 49 N. W. 736; *Hallock
v. Streeter,* 102 Fed. 193.

The appellant further contends that the trial court, after
holding that the partnership settlement was binding and
conclusive upon the parties, should have allowed appellant in
this action the benefits expressly allowed him by the terms
of that settlement.  This has reference to the Travis, Craib,
Merriman and Turner accounts, and the suit of R. E. Mc-
Conaghy against the firm of McConaghy & Elmore, concern-
ing which it was agreed by the terms of settlement that the
loss, if any, should be borne equally between appellant and
respondent.  There was evidence showing that appellant was
entitled to certain credits on those specific items, but the
court refused to enter upon the inquiry, reciting, however,
that his refusal was without prejudice to the right of appel-
lant to establish his claims in another action.  We think the
holding of the trial court was proper.  As we read the evi-
dence, no complete adjustment of these matters could now be
had owing to their unfinished nature.  The court was not
required to take them up by piecemeal.

The judgment is affirmed.

MORRIS, C. J., MOUNT, ELLIS, and CHADWICK, JJ., concur.