[No. 31048.   Department One.   January 26, 1950.]

LAVERN A. KARLE, *Respondent*, v. WILLIAM E. SEDER, *et al.*,
*Appellants.*[1]

[1]Reported in 214 P. (2d) 684.

*Royce & Hurley* and *E. A. Cornelius,* for appellants.

*Justin C. Maloney,* for respondent.

DONWORTH, J.—This is an action to recover damages for constructive fraud in connection with the sale of partnership property.

The complaint alleged actual fraud on the part of the defendants, but the trial court, in its memorandum opinion, stated that the proof had failed to show actual fraud and that constructive fraud only was involved in the case.

The case came on for trial before the court without a jury. In addition to the testimony of the parties and their witnesses, twenty-one papers and documents bearing upon the transaction, which is the subject matter of this action, were admitted in evidence. At the conclusion of the trial, the court took the case under advisement and later filed its memorandum opinion holding in favor of the plaintiff. Upon findings of fact later entered in accordance with this opinion, the court granted plaintiff judgment against all three defendants in the amount of $3,363.03.

The defendants moved for a new trial on six statutory grounds, supported by the affidavit of a proposed new witness, whose statements were denied by a counteraffidavit of the plaintiff. This motion having been heard and denied by the trial court, the defendants have appealed from the judgment against them.

Appellants make ten assignments of error, the first five being that the trial court erred in making findings of fact III to VII, inclusive, and the eighth being the refusal to enter appellants' proposed findings. In considering these assignments we shall summarize the evidence upon which the findings are based. There was much conflicting testimony as to the material facts which the court resolved in favor of respondent.

Appellant Gottlieb, at all times material to the controversy, was engaged in the real-estate business in Spokane

under the name of Pacific Realty Company and appellant McIntyre was employed by him as a salesman. The respondent and appellant Seder were engaged in business as equal partners under the name of Bubble Inn Tavern in the city of Spokane. During the summer of 1947, the personal relations between these partners became seriously strained, for reasons having no connection with the partnership business, and thereafter they did not speak to each other except when business transactions made it imperative. On September 7, 1947, the partners listed for sale their partnership property with appellant Gottlieb by a written listing agreement, exclusive for thirty days, which provided for a commission of one thousand five hundred dollars and a sale price of thirty thousand dollars. No sale of the tavern having been consummated within that time, by oral agreement, the listing was continued in effect except as to its exclusive provisions. During the period subsequent to September 7, 1947, appellants Gottlieb and McIntyre continued their efforts to effect a sale of the partnership property.

During the last week in January, 1948, appellant McIntyre brought Mr. and Mrs. Chamberlain to the tavern and introduced them to respondent as prospective purchasers, but no business was discussed at that time. On February 2, 1948, Mr. and Mrs. Chamberlain came to the office of Pacific Realty Company to discuss the purchase of the partnership property. After talking with appellant McIntyre, they executed an agreement with Pacific Realty Company for the purchase of the Bubble Inn Tavern for twenty-five thousand dollars, payable in monthly installments, *plus* the value of the inventory, and these purchasers thereupon paid to Pacific Realty Company five hundred dollars as earnest money. This agreement consisted of a printed form in which certain blank spaces were filled in with pen and ink. It contained a provision to the effect that it was subject to Pacific Realty Company's raising an additional three thousand dollars to be applied as part of the four thousand five hundred dollars to be paid to the seller upon delivery of possession of the tavern. This agreement was not shown

to the respondent by appellants nor were the terms thereof disclosed to him by any of them.

A day or two later, another agreement on an identical printed form and also dated February 2, 1948, was executed by Pacific Realty Company and by the purchasers providing for the sale of the partnership property for the sum of twenty-five thousand dollars *plus* the value of the inventory and containing a provision relating to the operation of pinball machines which were located in the tavern but were owned by appellant Seder. This agreement (which was apparently intended to replace the other instrument of the same date) acknowledged the receipt of five hundred dollars as earnest money and provided for the further payment of four thousand five hundred dollars upon acceptance of the sale by the seller. The balance of twenty thousand dollars was payable at the rate of five hundred dollars or more per month, including interest computed at five per cent per annum. No reference was made to the raising of any funds by Pacific Realty Company. The value of the inventory was later fixed at $1,726.07.

This agreement was accepted by appellant Seder as seller but was not shown to respondent nor were its terms disclosed to him by appellants.

Prior to the execution of the last mentioned agreement by the Chamberlains, appellant Gottlieb submitted to respondent another "Agreement to Purchase" (prepared on an identical printed form as the two agreements hereinbefore described) in which the name of the purchaser was left blank. This agreement called for the sale of the Bubble Inn Tavern for twenty thousand dollars *including* inventory payable as follows: Five hundred dollars down, four thousand five hundred dollars upon acceptance by the seller and fifteen thousand dollars in cash upon delivery of possession.

At the time respondent executed this agreement he was told by appellant Gottlieb that the Chamberlains were the prospective purchasers and that, if appellant Seder did not sign it as a co-owner and seller, the deal would be "off."

Later, appellant Seder signed this agreement in two capacities—as the purchaser and as one of the sellers.

When respondent on February 27, 1948, was called to the Pacific Realty office to close the sale, there was submitted to him for signature a bill of sale and lease assignment running to appellant Seder—not to the Chamberlains. He inquired the reason for this and was told that the Chamberlains were having difficulty in raising the necessary funds and that appellant Seder was going to carry part of the contract. Respondent did not execute these instruments at that time because the money to pay him was not then available. On the evening of the same day, respondent saw appellant Seder at the tavern and asked him why he was to convey the partnership property to him and was told that the Chamberlains could not raise all the necessary funds to take the entire tavern property and were acquiring respondent's half interest and appellant Seder was carrying the balance of the contract. Appellant McIntyre had previously made similar statements to respondent.

In the latter part of February, respondent read an item in a local newspaper relating to the filing of various bulk sales affidavits which indicated that the Chamberlains had purchased the Bubble Inn Tavern from appellant Seder for "about $25,000." Respondent then telephoned appellant McIntyre inquiring about the correctness of this item and was assured by him that it was a misprint in the paper. Appellant McIntyre denied that such a conversation ever took place.

None of the appellants at any time advised respondent that appellant Seder had arranged to sell the partnership property to the Chamberlains on a conditional sale contract for twenty-five thousand dollars plus the value of the inventory ($1,726.07).

On February 28th, respondent went to the office of Pacific Realty Company to close the sale. He then executed the bill of sale and lease assignment in favor of appellant Seder and received a statement showing the sale price to be twenty thousand dollars. He was paid his half of this

amount less seven hundred fifty dollars commission to Pacific Realty Company for effecting the sale, and less $3,195 which he owed appellant Seder on two notes (and three minor expense items), the net amount received by him being $5,950.85.

Prior to this date the Chamberlains had paid to Pacific Realty Company for the credit of appellant Seder, pursuant to their agreement to purchase the tavern, a total of five thousand dollars and on March 1, 1948, they paid $589.23 on account of the inventory. On the same day that respondent conveyed the tavern to appellant Seder (February 28th), the Chamberlains executed a conditional sale contract with him for the purchase of the entire partnership property for twenty-five thousand dollars plus the value of the inventory in accordance with their agreement to purchase, dated February 2, 1948. They took possession of the tavern on March 1, 1948.

Pacific Realty Company accounted to appellant Seder for the five thousand dollars and the $589.23 received from the Chamberlains and paid him $4815.85 (which apparently was used in paying respondent his $5950.85). Their statement to Seder was on the basis of a twenty-five thousand dollar sale.

About March fourth or fifth, respondent went to the tavern and in the course of a conversation with Mr. Chamberlain, then for the first time learned that appellant Seder had sold the partnership property to the Chamberlains for twenty-five thousand dollars instead of twenty thousand dollars.

The principal issue of fact presented to the trial court was whether respondent knew, or should have known, at the time he executed and delivered to his partner the bill of sale covering his half interest in the tavern and accepted the net proceeds of the ten thousand dollar payment, that appellant Seder had agreed to sell to the Chamberlains for twenty-five thousand dollars plus the value of the inventory under a conditional sales contract.

The testimony of the parties regarding the transaction here involved is in direct conflict upon this issue. The trial court, after hearing the witnesses and considering the exhibits submitted in evidence, made findings of fact favorable to respondent's version of the transaction.

■ ■ We have carefully examined the testimony and the exhibits and are of the opinion that the findings are supported by the evidence. Certainly upon the record we cannot say that the evidence preponderates against the court's findings. This court has always adhered to the rule that, where the trial court has made findings of fact upon conflicting testimony, they will not be disturbed unless this court can say that the evidence preponderates against them. This rule is so well established that no citation of authority is required.

■ In deciding this case the superior court correctly applied the rule of law laid down by this court in *Finn v. Young*, 46 Wash. 74, 89 Pac. 400, that "partners must observe the utmost good faith towards each other in all their transactions."

In the cited case, as in the case at bar, one partner purchased the half interest of the other partner in the partnership property for ten thousand dollars at a time when the purchasing partner had given an option to a third party to sell the entire partnership property for twenty-five thousand dollars plus the value of the inventory (ten thousand dollars) making a total selling price of thirty-five thousand dollars. The purchasing partner falsely represented to his partner that the option price was twenty thousand dollars (partly payable in corporate stock) and that it was unlikely that the option would be exercised. After acquiring his partner's half interest for ten thousand dollars, the option was exercised and the purchasing partner received thirty-five thousand dollars for the entire partnership property. About four years later the selling partner discovered these facts and brought suit for the difference between what he had received and one-half of thirty-five thousand dollars. The trial court granted the selling partner's motion

for nonsuit and in remanding the case for a new trial we said:

"Upon these facts, which we must consider as true, we do not hesitate to say that the trial court erred in granting a nonsuit and taking the case from the jury. The rule is that partners must observe the utmost good faith towards each other in all their transactions.

" 'The same rules and tests are to be applied to the conduct of partners as are ordinarily applicable to that of trustees and agents.' 22 Am. & Eng. Ency. Law (2d ed.), p. 115.

" 'A sale by one partner to another of his partnership interest will not be sustained unless made for a fair consideration and upon full disclosure by the vendee to the vendor of whatever information he has as to the value of such property; and concealment of a material fact by the party whose duty it is to disclose it is sufficient to annul the compact.' 22 Am. & Eng. Ency. Law (2d ed.), p. 105.

"See, also, *Caldwell v. Davis,* 10 Colo. 481, 15 Pac. 696, 3 Am. St. 599; *Jennings v. Rickard,* 10 Colo. 395, 15 Pac. 677; *Wright v. Duke,* 36 N. Y. Supp. 853. It was the duty of the respondent to fully inform the appellant of his contract with Carroll, and of the fact that Carroll would, within the ninety days, take up the option and pay the purchase price of $35,000. He did not do so, but deceived the appellant into the belief that Carroll would be unable to take the property."

The second trial of the case resulted in a verdict and judgment for seven thousand dollars in favor of the plaintiff, and upon appeal it was held by this court that the proper measure of damages had been applied. In discussing this phase of the case it was said (*Finn v. Young,* 50 Wash. 543, 97 Pac. 741):

"That is exactly the case here, for after any amount of talk and argument has been indulged in, the obvious fact remains that, if the fraud had not been perpetrated upon the respondent, instead of receiving $10,500 for his half interest in the business, he would have received one-half of the $35,000 or $17,500. His damage then by reason of the fraud was $7,000, the amount found by the jury. Even if it did not conclusively appear that $35,000 was the actual value, a fiduciary relation existed between the respondent and appellant, and the respondent was entitled to any profit that might be made by reason of the sale."

While *Finn v. Young, supra,* involved willful fraud and this case involves constructive fraud consisting of the concealing from respondent of the consideration which appellant Seder was receiving from the Chamberlains for the sale of the partnership property, the same rule is applicable to both types of cases.

The general rule as to the duties of partners to each other in the sale and purchase of a partnership interest is expressed in 40 Am. Jur. 218, § 129, as follows:

"The general rule that the utmost good faith is required of partners in their relationship with each other, and that, since each is the confidential agent of the other, each has a right to know all that the others know and each is required to make full disclosure of all material facts within his knowledge in any way relating to partnership affairs, is held almost universally to apply in the case of a sale by one partner to another of his interest in the partnership. Such a sale will be sustained only when it is made in good faith, for a fair consideration and on a full and complete disclosure of all important information as to value. In order to impose upon a partner purchasing the interest of a copartner the duty of making full disclosure of matters affecting its value, it is not necessary to show that the latter was relying upon the former to make such disclosure."

█ Appellants argue that in this case the personal relations of the partners were such that neither one had any confidence in the other and there was no fiduciary relationship existing between them. That such fact does not relieve the purchasing partner of his fiduciary obligation in dealing with the selling partner was held in *Johnson v. Peckham,* 132 Tex. 148, 120 S. W. (2d) 786, 120 A. L. R. 720. In the annotation to this case found in 120 A. L. R. at page 728, the author says:

·"The duty or obligation of partners to act with the utmost candor and good faith in their dealings as between themselves was said in *Wright v. Duke* (1895) 91 Hun, 409, 36 N.Y.S. 853, not to be lessened by the fact that during negotiations for the purchase of one partner's share by another the relations between them became strained, for the obligation remains until the relation is terminated. (As holding that after a sale has been consummated the partnership re-

lationship ceases and the partners may thereafter deal with each other at arm's length, see *Wise Realty Co. v. Stewart* (1915) 169 Cal. 176, 146 P. 534.)

"And again, in *Johnson v. Peckham* (Tex.) (reported herewith) ante, 720, it was held that the mere fact that strained relations had grown up between the partners, and that a suit for an accounting and dissolution, filed by the partner who later bought his copartner's interest, had been pending for some time prior to such purchase, did not relieve the purchasing partner of his duties as a fiduciary, or justify him, even in the absence of conscious fraud, in dealing with his copartner as a stranger."

See, also, 40 Am. Jur. 219, § 130, re Effect of Strained Relations.

Appellants rely on *Elmore v. McConaghy*, 92 Wash. 263, 159 Pac. 108, as holding that, when partners start negotiating between themselves for the sale of one partner's interest, the fiduciary relation ceases to exist. There is language in the decision which supports appellants' contention. However, this court in that case distinctly found: "There is no proof of fraud, overreaching, undue influence or reliance on fiduciary relations."

In the case at bar the trial court made these findings:

"III

"That during all of the times herein mentioned there existed a fiduciary relation between plaintiff and defendant, William E. Seder."

"V

"That defendants and each of them failed to disclose to plaintiff that a sale of said partnership property was being made for $25,000 plus the value of the inventory. That the only sale agreement of which the plaintiff was advised was a sale to the Chamberlains for $20,000.00 including inventory. That at all times during the pendency of the sale the defendants Gottlieb and McIntyre advised and cautioned the purchasers, Chamberlain and wife, not to go near the tavern or talk to plaintiff. That said Chamberlains did not go to the tavern or talk to the plaintiff till after the closing of the sale. That during February, 1948 defendant, McIntyre, again informed plaintiff that the sale being made was for $20,000.00 including inventory. That defendants represented to plaintiff that it was necessary in order to consummate the sale that plaintiff transfer his interest in the

partnership property to defendant Seder for the reason that the purchasers were not going to be able to pay all cash for the property and that defendant Seder would carry the unpaid balance of the contract."

Since appellant Seder was guilty of constructive fraud in failing to disclose to his partner the price he was receiving from the Chamberlains, the present case is distinguishable from *Elmore v. McConaghy*, in which there was no proof of fraud or overreaching.

With respect to the liability of appellants Gottlieb and McIntyre to disclose to respondent the consideration being paid by the Chamberlains, we hold that a fiduciary relationship (that of agents and principal) existed between these parties. Appellant Gottlieb charged and received from respondent $750 as realtor's commission for effecting a sale of respondent's half interest to his partner. Prior to closing this transaction both of these appellants knew that the Chamberlains had paid to them (for appellant Seder's account) a total of $5,589 under a signed agreement to purchase the entire partnership property for $25,000 plus $1,726.07 (being the value of the inventory). These appellants, occupying this fiduciary relationship to respondent, failed to disclose this material fact to their principal as it was their legal duty to do. The superior court was correct in holding them liable for this breach of duty.

In *Cantwell v. Nunn*, 45 Wash. 536, 88 Pac. 1023, we stated that an agent must keep his principal fully informed as to matters entrusted to him, saying:

"The law exacts of every agent the utmost fidelity to his principal. He must keep him fully informed as to all his transactions, and the state of the business or interests entrusted to him. Any departure from these rules is a fraud in law."

This rule was quoted with approval in *Westerbeck v. Cannon*, 5 Wn. (2d) 106, 104 P. (2d) 918, where a judgment against a real-estate agent for breach of his duty to his principal was affirmed, this court holding that the agent's conduct amounted to fraud in law. See, also, 3 C. J. S. 8, § 138b.

Appellants finally contend that the court erred in denying

their motion for new trial. In support thereof they produced the affidavit of a prospective witness who would testify that he overheard a conversation between respondent and appellant Seder which took place in the Pacific Realty Company's office prior to the consummation of this transaction. In this alleged conversation, the affidavit states, respondent made a statement which indicated that he knew that the Chamberlains were to pay twenty-five thousand dollars for the tavern.

The trial court in denying the motion for new trial said in part:

"I clearly recollect Mr. Seder's testimony that he engaged in no conversation of any kind whatsoever with plaintiff at any place with respect to the transaction in question. This sounds credible to me, for while the record does not contain evidence to that effect, both counsel, for the purpose of oral argument have assumed it to be a fact that Seder came between the plaintiff and his wife. I am satisfied that the relations between these men were extremely bitter. Under those circumstances I could not attach any credit to the tendered affidavit. Certainly, if the facts therein recited are correct, Seder should have known of them at the time of the trial and they are, therefore, not timely offered. If the affidavit were receiver, whom would the trier of the facts believe, Seder or the proposed witness Baker? Certainly there could be no misapprehension that the most important question at the trial was, Did Karle know of the $25,000.00 sale price? It just isn't conceivable that if the conversation in question took place that this fact would not have been disclosed at the trial."

■ In passing upon a motion for new trial the superior court has a wide discretion. *Discargar v. Seattle*, 30 Wn. (2d) 461, 191 P. (2d) 870. We are unable to hold that the trial court abused its discretion in denying appellants' motion in this case.

The judgment of the superior court is correct and it is hereby affirmed as to all three appellants.

SIMPSON, C. J., SCHWELLENBACH, GRADY, and HAMLEY, JJ., concur.