[No. 6440.   Decided March 2, 1907.]

DOROTHY MORGAN CANTWELL, *Respondent*, v. ALEXANDER H. NUNN *et al., Appellants*.[1]

CANCELLATION OF INSTRUMENTS—DEEDS—PRINCIPAL AND AGENT—FRAUD OF AGENT.  A quitclaim deed made to an agent for a small sum, will be cancelled for fraud and violation of the agent's trust, where it was obtained from the principal, a woman with little knowledge of business or real estate titles, upon representations by the agent that the land had been sold under tax judgments and that her interest had been devested, when she had an interest in part of the property, and the agent knew that the tax judgment, which was set aside on his motion, was void as a matter of law.

APPEAL—REVIEW—FINDINGS—DEEDS—DELIVERY.  A finding that a deed was executed in blank and that the party obtaining the same afterwards filled in the name of the grantee, sufficiently shows that the deed was delivered, in the absence of a statement of facts or bill of exceptions.

Appeal from a judgment of the superior court for King county, Griffin, J., entered May 1, 1906, upon findings in favor of the plaintiff, setting aside a quitclaim deed procured through fraud and misrepresentation, and directing a reconveyance to the plaintiff.  Affirmed.

*S. S. Langland*, for appellants.

*C. R. Hawkins* and *A. C. MacDonald*, for respondent.

RUDKIN, J.—The facts alleged in the amended complaint and found by the court are substantially these:  That on and prior to the 20th day of July, 1903, the plaintiff was the owner in fee of seventy-five acres of land in King county, particularly described in the complaint and findings; that she is a woman of limited education and has little knowledge of business transactions, especially in regard to real estate titles; that on the 29th day of September, 1902, a tax judg-

[1]Reported in 88 Pac. 1023.

ment was entered in the superior court of King county in a
proceeding entitled King county v. the plaintiff herein, and
pursuant to the judgment a tax deed for 40 acres of the
tract in controversy was executed by the county treasurer
and delivered to one M. F. Blum, the purchaser at the tax
sale; that on the 17th day of March, 1902, a certain other
tax judgment was entered in the same court in a proceeding
entitled G. W. Vanderbeck v. the plaintiff herein, and pur-
suant to this judgment a tax deed for the remainder of the
tract in controversy, less a strip 100 feet in width off of
the west side thereof, was executed by the county treasurer
and delivered to one H. B. Kennedy, the purchaser at the
tax sale; that at the time of the commencement of said tax
proceedings the plaintiff was a resident of King county, was
not served with summons or complaint, and had no notice or
knowledge of the pendency of either of said actions, or of
the tax judgments or sales, and no demand for possession
of the premises has ever been made upon her; that on or
about February 1, 1903, the plaintiff employed the defend-
ant A. H. Nunn as her agent to sell all of said real property
for her on a commission basis, and from time to time there-
after consulted with him in relation to such sale; that on or
about the 10th day of July, 1903, the defendant Nunn called
on the plaintiff and informed her that he had examined the
records in the auditor's office in King county, and had dis-
covered that all of the lands in controversy had been sold
under tax judgments; that the land had been purchased in
separate tracts by Blum and Kennedy; that the deeds had
been executed and delivered by the county treasurer; that
the plaintiff had been devested of all interest in said lands,
and that the purchaser at the tax sales had acquired a perfect
title thereto; that the plaintiff thereupon informed the de-
fendant Nunn that she had been a resident of King county
for a number of years, and that no notice or process of any
kind had been served upon her in the tax foreclosure pro-

ceedings, and of such facts the defendant Nunn was already
informed; that the defendant Nunn, with intent to defraud
the plaintiff, while acting as her agent, and with intent to
acquire the plaintiff's interest in said lands for his own use,
informed the plaintiff that she could do nothing to recover
the land, that he, Nunn, had a client whom he thought would
give $50 for a quitclaim deed for that portion of the lands
purchased by Kennedy, and he advised the plaintiff to accept
it; that these representations were made by the defendant
Nunn with intent to deceive and defraud the plaintiff and
thereby acquire title to the plaintiff's land for his own use
and benefit, and that the plaintiff relied upon such repre-
sentations and was deceived thereby, and by reason thereof
agreed to sell the lands purchased by Kennedy to the client
of the defendant Nunn for the sum of $50; that in pursuance
of his purpose and design to defraud the plaintiff, the de-
fendant Nunn induced the plaintiff to execute a quitclaim
deed for all of said lands on the 20th day of July, 1903, in
which deed the name of the grantee was left blank, and immedi-
ately after the execution of said deed the defendant Nunn
inserted therein the name of the defendant Frances Pillsbury
as grantee; that the defendant Pillsbury is the mother-in-law
of, and resides with, the defendant Nunn, and that said Pills-
bury was not in fact the purchaser of said property, and
has no interest therein, but that said property was purchased
in the name of said Pillsbury for the use and benefit of the
defendant Nunn, for the purpose of deceiving the plaintiff
and concealing from her the name and identity of the real
purchaser; that on the 26th day of September, 1903, the de-
fendant Nunn filed a motion in the name of the plaintiff to
vacate the tax judgment in the case of Vanderbeck vs. the
plaintiff, and supported the same by a paper which he had
procured from the plaintiff, representing the same to be a
receipt for the $50 paid on account of the quitclaim deed,
but which was in fact an affidavit in form, averring that at
the time of the commencement of the proceedings to fore-

close the delinquency certificate the plaintiff herein was a
resident of King county, and that no notice or process had
been served upon her; that said motion was denied by the
court at the request of the plaintiff, upon her showing that
the motion was made without her knowledge or consent; that
thereafter on the 20th day of October, 1903, the defendant
Pillsbury filed a further motion to vacate the judgment, sup-
ported by the affidavit of the defendant Nunn to the effect
that the plaintiff herein was, at the time of the commence-
ment of said proceedings, a resident of King county, and was
not served with notice or process therein, which motion was
granted by the court, and that prior to the commencement
of this action the plaintiff tendered and paid into court the
$50 received by her for the quitclaim deed above referred to.
On the foregoing facts the court rendered judgment setting
aside the quitclaim deed from the plaintiff to the defendant
Pillsbury, and directing the defendant Pillsbury to reconvey
to the plaintiff. From this judgment the defendants appeal,
and assign as error the insufficiency of the complaint and
findings to support the judgment.

It is strange that a court of equity should be asked at this
late day to sanction and uphold such fraud and double deal-
ing on the part of an agent as is disclosed by this record.
But, while the conclusion of law and decree which should
follow from the foregoing findings would seem inevitable,
we will nevertheless discuss briefly the different objections
urged on behalf of the appellants. It is first contended that
it does not appear that the respondent was the owner of the
land or had any interest therein at the time of the execution
of the quitclaim deed. This contention is based upon the
theory that the finding that the property was sold under
tax judgments, negatives and destroys the finding that the
respondent was the owner in fee. It is true the finding may
not necessarily show that the tax judgment was void, but
nevertheless it clearly appears that the appellant Nunn knew
or believed that the tax judgment was void as a matter of

law, and could be set aside on motion, and he not only concealed knowledge of this fact or belief from the respondent, but made representations directly to the contrary. It clearly appears from the complaint and findings that the respondent was the absolute owner of a strip 100 feet in width along the west side of the tract sold to Kennedy, and had a valid and subsisting interest in other portions of the land.

It is next contended that the findings do not show that the quitclaim deed executed by the respondent was ever delivered. There was no specific finding to that effect, but the court did find that the deed was executed by the respondent, that the appellant thereafter filled in the name of the grantee, that the property was purchased for the benefit of the appellant Nunn, and that appellant Pillsbury as grantee moved to vacate the judgment. From the foregoing we must infer a delivery, in the absence of a statement of facts or bill of exceptions. We have thus far considered the case from the standpoint of actual fraud, which we think the findings abundantly show, but the same result necessarily follows from the other facts found. The law exacts of every agent the utmost fidelity to his principal. He must keep him fully informed as to all his transactions, and the state of the business or interests entrusted to him. Any departure from these rules is a fraud in law. An agent to sell cannot become the purchaser, and an agent to buy cannot be himself the seller. Equity removes from the trustee every temptation to violate his trust by declaring in advance that all such transactions are null and void at the option of the principal, and the wisdom of this rule is fully demonstrated by the record before us.

On the ground of both positive and implied fraud, the judgment appealed from is correct, and the same stands affirmed.

HADLEY, C. J., FULLERTON, DUNBAR, MOUNT, and CROW, JJ., concur.

ROOT, J., took no part.