[No. 5075–1–III.   Division Three.   December 22, 1983.]

DONALD ZODA, ET AL, *Respondents,* v. ECKERT, INC., ET AL, *Appellants.*

---

[6]This language was deleted by Laws of 1983, 1st Ex. Sess., ch. 4, § 5, p. 1538.

*Daryl Jonson* and *Cowan, Walker, Jonson & Moore,* for appellants.

*Arthur D. Klym, Jan R. Armstrong,* and *Armstrong & Klym,* for respondents.

STAUFFACHER, J.*—Katherine and Donald Zoda purchased a home which they later claimed failed to meet the sellers' representations.

In April 1979, Merrill Lynch Relocation Management, Inc. (Merrill Lynch) executed a listing agreement, on a house located in Kennewick, with Eckert, Inc. (Eckert), a real estate broker, for $86,900.[1] On April 14, 1979, Ms. Bobbie Clark (Clark), a real estate saleswoman for Eckert, and a fellow salesman went to the property, measured it, and obtained all the pertinent information about the prop-

---

*Judge Walter A. Stauffacher is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

[1]The home was originally owned by Dennis and Kathleen Long. Pursuant to an agreement between Mr. Long's employer and Merrill Lynch, Merrill Lynch became the real party in interest.

erty. Clark wrote this information on their Multiple Listing Service Residential Listing Form and Sales Agency Contract which the Longs signed. The form recited that the house contained 1,435 square feet on the main floor, 1,386 square feet on the basement floor and that the house contained a heat pump. However, this information was incorrect. At trial, it was established that the house had 1,290 square feet on the main floor and 1,248 square feet on the basement floor. In addition, it did not have a heat pump which, according to expert testimony, could not have been detected by a lay person. The incorrect information was distributed on a multiple listing form.

Katherine Zoda was a licensed real estate saleswoman with Advance Real Estate (Advance), a Yakima broker. She was engaged solely in the sale of condominiums, rather than separate homes or commercial property. Advance was not a member of the Multiple Listing Service and, therefore, according to the testimony, neither Advance nor Zoda could have sold this property.

Zoda saw an ad in the paper for the subject property and contacted Clark, indicating the Zodas might wish to purchase the property for their home. Zoda and Clark inspected the property and Zoda apparently obtained the square footage and heat pump information from the listing agreement. Zoda made an offer, through Clark, to purchase the property for $82,500. This offer was rejected by Merrill Lynch, but Merrill Lynch made a counteroffer to sell the property to Zoda for $84,500. It is not clear from the testimony when such discussions took place, but Zoda then consulted with her broker, Advance, and Clark consulted with her broker, Eckert.

On May 2, 1979, Clark prepared a Real Estate Purchase and Sale Agreement for the purchase price of $84,500, with $8,450 down and the balance payable through a conventional loan. This agreement was signed by the Zodas and clearly recited "Katherine is Lic. Realtor in the state of Washington". On the same date, Clark prepared a Realtor's Inter–Office Agreement Division of Realtors Fees, reciting

that Eckert, "the listing agent, representing the Seller" has cooperated with Advance in the sale of the property and agreed that the realtor service fee shall be divided 60 percent to Eckert and 40 percent to Advance. Clark forwarded the purchase agreement but not the division of fee agreement to Merrill Lynch. Merrill Lynch accepted and agreed to pay a 7 percent commission on the sale. Merrill Lynch was not told of the fee split agreement.

Desiring to move into their new home before the transaction was closed, the Zodas executed a "Move–In Agreement" with Merrill Lynch, arranged through Clark. This agreement recited:

We have inspected said property and any personal property and agree to accept said property in regards to condition, mechanically and otherwise, as is.

After the Zodas moved into the home, the transaction was closed. Merrill Lynch paid the 7 percent commission ($5,915) to Eckert; Eckert paid 40 percent thereof ($2,366) to Advance; and Advance paid the $2,366 to Zoda, who reported the receipt of such sum as a "fee received" on her income tax return. Throughout the progress of the transaction, Zoda had no contact of any kind with Merrill Lynch; Clark conducted all of the negotiations and prepared all of the paper work.

Approximately 1 year later, the Zodas had the home appraised and discovered there was a shortage of square footage and there was no heat pump. They then brought this action for negligent misrepresentation against Merrill Lynch, Eckert and Clark. The defendants counterclaimed alleging to be damaged by Zoda's failure to inform the seller of her interest, as a realtor, in the property and her failure to obtain the informed consent of the seller to such a purchase. The trial court, sitting without a jury, gave judgment in favor of the plaintiff against all defendants. All defendants appeal; we affirm.

█ The defendants contend Zoda was a subagent of the seller because she received, as a realtor, a portion of the sales commission. Further, they argue Zoda, as a subagent,

violated her duty to disclose to the principal her true position as a realtor intending to purchase and she is guilty of the same negligent misrepresentation as the agent and principal.

One of the primary requisites of an agency, or subagency as here contended, is that the principal shall have the right of control over such agent.

> The agency relationship results if, but only if, there is an understanding between the parties which . . . creates a fiduciary relation in which the fiduciary is *subject to the directions* of the one on whose account he acts. It is the element of continuous subjection to the will of the principal which distinguishes the agent from other fiduciaries and the agency agreement from other agreements.

(Italics ours.) Restatement (Second) of Agency § 1, comment *b* (1958); *see also Moss v. Vadman*, 77 Wn.2d 396, 463 P.2d 159 (1969); *Blodgett v. Olympic Sav. & Loan Ass'n*, 32 Wn. App. 116, 646 P.2d 139 (1982). Defendants claim that inasmuch as the property was listed with the Multiple Listing Service, any selling agent would be under the control and direction of Merrill Lynch, the principal. We disagree. Neither Zoda nor her broker, Advance, were members of the Multiple Listing Service and therefore were not subject to any direction or control by Merrill Lynch. Zoda could only act in one capacity, that of a purchaser, and Merrill Lynch could have no control over whether Zoda decided to purchase or not to purchase, nor what price she would offer or accept. Zoda could not have sold the property to anyone else as a selling agent; she only had the right or power to purchase the property if she could meet the price. Moreover, it should be noted that she did not have the power to alter the legal relations between Merrill Lynch and any third persons or Merrill Lynch and herself other than by agreeing to purchase the property for the price set by Merrill Lynch. Restatement (Second) of Agency § 12; *Moss v. Vadman, supra.*

The defendants cite many cases including *Mersky v. Multiple Listing Bur. of Olympia, Inc.*, 73 Wn.2d 225, 437

P.2d 897 (1968); *Frisell v. Newman,* 71 Wn.2d 520, 429 P.2d 864 (1967); *First Church of the Open Bible v. Cline J. Dunton Realty, Inc.,* 19 Wn. App. 275, 574 P.2d 1211 (1978); and *Ross v. Perelli,* 13 Wn. App. 944, 538 P.2d 834 (1975). None are apposite. In *Frisell* and *First Church,* the court found that in a *multiple listing relationship,* the selling agent is an authorized subagent of a seller. Further, in both those cases, the selling agent actively participated in negotiations and preparations of documents. *Ross* also involved active participation by the selling agent, although it is not clear if there was a multiple listing relationship. Finally, *Mersky* was not concerned with the 2–agent situation.

Here, none of those situations are present. Zoda and Advance, her broker, were not members of the Multiple Listing Service, nor were they the listing agent or broker. Zoda had no contact of any kind with Merrill Lynch; Clark and Eckert prepared all of the documents involved in the transaction. Zoda did no more than any other purchaser of a home.

Defendants argue that Zoda's receipt of 40 percent of the commission made her a selling agent. Indeed, counsel at trial adroitly maneuvered Zoda into testifying that she was the "selling agent" by receiving part of the sales commission and reporting it on her income tax return. Such testimony was a legal conclusion which was not binding on the court. The unrefuted testimony indicated the real purpose of the fee split arrangement. Zoda testified as follows: "We used the commission as a negotiating point to reach an agreement on an agreeable price between Eckert and ourselves." Thus, the intention was to use the fee split to reduce the actual payment from the $84,500 Merrill Lynch was asking to the $82,500 Zoda was willing to pay.

The complicated mechanism of the fee splitting agreement (Eckert to Advance, Advance to Zoda, and Zoda reporting it as a "fee") was obviously to avoid the penalties of the "anti–kickback" statute, RCW 18.85.330, which provides:

*It shall be unlawful for any licensed broker to pay any part of his commission or other compensation to any person who is not a licensed real estate broker in any state of the United States . . . or to a real estate salesman not licensed to do business for such broker;* or for any licensed salesman to pay any part of his commission or other compensation to any person, whether licensed or not, except through his broker.

(Italics ours.) *See also* RCW 18.85.155, .230(22), and .320. Thus, the arrangement employed was the only method by which the $2,000 difference between the asking and offering prices could be resolved without violating the letter of the law. In any event, this arrangement for negotiating the price of the house did not turn Zoda from a purchaser into a "selling agent" of the house.

Many of defendants' other assignments of error turn on whether Zoda was a subagent of Merrill Lynch. Our holding that she was not an agent disposes of those issues.

Defendants further claim, however, that Zoda should not recover because she, as a realtor, violated provisions of the real estate licensing statute, RCW 18.85. First, they argue Zoda, as well as Clark, was required to inspect and verify the information on the initial listing form and the multiple listing information sheet because both are real estate agents, citing RCW 18.85.230(4) and (5). The purpose of these sections is to avoid disseminating false information to the public. *See Nuttall v. Dowell,* 31 Wn. App. 98, 639 P.2d 832 (1982). Here, Zoda was not transmitting information to the public. She was only relying on the information as would any other purchaser. If defendants' argument was accepted, any real estate person purchasing a family home would be in peril by accepting the representations of the seller rather than going to the time and expense of verifying each and every one of those representations. We decline to interpret the statute as imposing such an independent duty on purchasing real estate agents. Defendants also claim Zoda violated RCW 18.85.230(24) which provides for revocation or suspension of a license for failing to disclose to an owner the realtor's true position if

he intends to purchase for his own use. Again, we disagree. Zoda did disclose on the offer to purchase that she was a licensed realtor. Thus, she made known to Merrill Lynch that it was a realtor who was offering to purchase the home and she thus satisfied the requirements of that statute.

Next, defendants claim the trial court erred in allowing Zoda to testify as to what the "acceptance as is" clause meant to her, citing the parol evidence rule. The clause unambiguously states that the Zodas "accept said property *in regards to condition,* mechanically and otherwise, as is." (Italics ours.) Zoda testified it was her intent or understanding that this clause pertained to the *condition* of the premises. The *condition* of the property is wholly separate and distinct from the *size* of the property or the existence of a heat pump (which only an expert could determine). Zoda's testimony merely reiterated what the clause itself set forth. If it was error to admit such testimony, it was harmless. On the other hand, if it could be said that the clause was ambiguous, then such testimony was admissible. "[P]arol evidence may always be used to explain ambiguities in written instruments and to ascertain the intent of the parties." *Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 852, 586 P.2d 845 (1978).

Merrill Lynch counterclaimed for $3,000 damages against Zoda, claiming she breached her fiduciary duty, as a subagent, to disclose that she was a realtor purchasing for her own account. First, Zoda was not a subagent and therefore owed no such duty. Second, Zoda did notify Merrill Lynch that she, as purchaser, was a realtor. Third, Merrill Lynch suffered no damage; it received exactly what it bargained for, to wit: $84,500. The trial court did not err in denying the counterclaim.

Finally, the defendants contend the court erred in the computation of the damages awarded to the plaintiffs. All parties agree that an expert appraiser testified the value of the house at the time of the sale was $79,000. Therefore, the damages awarded should have been $5,500 instead of the $5,600 recited in the judgment. The judgment should

be amended accordingly to reflect the correct agreed–upon amount.

Affirmed and remanded to correct the judgment.

MUNSON, C.J., and GREEN, J., concur.

Review denied by Supreme Court March 9, 1984.