169 P.3d 823 (2007)
Certification from the United States Court of Appeals for the Ninth Circuit in J & J CELCOM et al., Plaintiffs-Appellants,
v.
AT & T WIRELESS SERVICES INC., Defendants-Appellees.
No. 79884-2.
Supreme Court of Washington, En Banc.
Argued June 28, 2007.
Decided October 25, 2007.
Thomas William Hayton, Robert G. Nylander Jr., Philip Edgerton Cutler, Cutler Nylander & Hayton PS, Kerissa M. Freeberg-Finne, Attorney at Law, Seattle, WA, John J. Oitzinger, Helena, MT, for Appellants.
Rima Jamil Alaily, Leonard J. Feldman, Brendan T. Mangan, Heller Ehrman LLP, Seattle, WA, for Appellees.
C. JOHNSON, J.
¶ 1 This case involves a certified question from the United States Court of Appeals for the Ninth Circuit. We are asked to determine whether, under the Revised Uniform Partnership Act, a controlling partner violates the duty of loyalty where the controlling partner causes the partnership to sell its assets to an affiliated party. We answer the certified question in the negative.

FACTS AND PROCEDURAL HISTORY
¶ 2 While certain facts may remain disputed in the federal court proceedings, the Ninth Circuit provided the following description of the parties, their partnerships, and those facts we consider for our analysis. J & J Celcom and other former partners (minority partners) acquired their fractional interests in nine regional cellular telephone partnerships through a lottery. The key asset in each partnership included the right to own licenses for various cellular radio frequencies. At the time of the asset sales at issue in this case, the minority partners owned less than five percent of each partnership, and AT & T Wireless Services (AWS) owned the remainder. AWS provided wireless service to the customers and all technical and administrative services related to the partnerships.
¶ 3 To eliminate the expense of the administrative services related to the partnerships, AWS invoked its majority interest in each partnership and voted to buy out the minority partners. Initially, AWS offered to buy out the minority partners at a price slightly higher than the third party appraisal of four of the nine partnerships. AWS sent letters to the minority partners offering an opportunity to sell voluntarily. The letters stated that, if any minority partner declined the offer, AWS would vote to sell the assets of its partnership to an affiliated entity at the appraised value, dissolve the partnership, and pay the minority partners their pro rata *824 share of the purchase price. Several minority partners accepted the offer but because some declined, AWS proceeded with the asset sales. The Ninth Circuit ruled that the asset sale transactions at issue were based on prices that were fair as a matter of law. J & J Celcom v. AT & T Wireless Servs., Inc., 481 F.3d 1138 (9th Cir.2007).

CERTIFIED QUESTION
¶ 4 Does a controlling partner violate the duty of loyalty to the partnership or to dissenting minority partners where the controlling partner causes the partnership to sell all its assets to an affiliated party at a price determined by a third party appraisal, when the appraisal and the parties to the transaction are disclosed and the partnership agreement allows for sale of assets upon majority or supermajority vote, but the partnership agreement is silent on the subject of sale to a related party?

Summary of Claims Dismissed
¶ 5 To put this question in the context of issues that have been already decided in the federal court proceedings, and to further narrow the answer we give in this case, we summarize those issues already resolved. The minority partners who opposed the asset sales filed suit in federal District Court for the Western District in Seattle. As the Ninth Circuit noted, these minority partners alleged:
(1) Breach of Contract
(2) Breach of Implied Covenant of Good Faith and Fair Dealing
(3) Breach of Fiduciary Duties
(4) Claims of Misrepresentation
(5) Tortious Interference
(6) Unjust Enrichment
J & J Celcom, 481 F.3d at 1141.
¶ 6 After 15 months of discovery, AWS moved for summary judgment. The minority partners cross-moved for partial summary judgment on liability. The district court granted AWS's motion and denied the minority partners' motion.
¶ 7 The minority partners appealed. The Ninth Circuit affirmed the federal district court's grant of summary judgment for AWS on all but one of the issues. Further, the Ninth Circuit held that the asset sale transactions did not breach either the partnership agreements or the implied covenant of good faith and fair dealing. The sole remaining issue  a claim for breach of the duty of loyalty  is the subject of the certified question now before us.[1]

ANALYSIS
¶ 8 The relevant portion of the Washington Revised Uniform Partnership Act (RUPA) provides:
(1) The only fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in subsections (2) and (3) of this section.
(2) A partner's duty of loyalty to the partnership and the other partners is limited to the following:
(a) To account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity;
(b) To refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership; and
(c) To refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership.
(3) A partner's duty of care to the partnership and the other partners in the conduct and winding up of the partnership business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

*825 (4) A partner shall discharge the duties to the partnership and the other partners under this chapter or under the partnership agreement and exercise any rights consistently with the obligation of good faith and fair dealing.
(5) A partner does not violate a duty or obligation under this chapter or under the partnership agreement merely because the partner's conduct furthers the partner's own interest.
RCW 25.05.165(1)-(5).
¶ 9 Here, as the federal district court held, the partnership agreement expressly allows for sale of partnership assets by majority vote. The federal district court and Ninth Circuit ruled that when AWS sold the partnership assets, it disclosed material information, paid fair consideration, and acted in good faith as a matter of law. Also, the minority partners have offered no proof of damages as a result of AWS's sale of the partnership's assets. Therefore, we find nothing in Washington's RUPA, when applied to the present case, that indicates that AWS violated the duty of loyalty to the partnership.
¶ 10 In addition to Washington's RUPA, our finding is supported by Washington case law. We recognized in Karle v. Seder, 35 Wash.2d 542, 550, 214 P.2d 684 (1950) that a partner may lawfully purchase partnership assets from another partner, provided they act in good faith, pay fair consideration, and disclose material information. In Bassan v. Investment Exchange Corp., 83 Wash.2d 922, 524 P.2d 233 (1974) we held that a partner has a duty to account for any benefit of profit held by the partner relating to any aspect of the partnership.
¶ 11 It is of interest to note that the Ninth Circuit perceived our holdings in Karle and Bassan as pointing "in different directions." J & J Celcom, 481 F.3d at 1142. However, we fail to see how the holdings conflict. The cases simply addressed different issues on completely different sets of facts. Karle concerned the unlawful concealment of material information by a partner and Bassan concerned a partner's lawful requirement to account for any profit derived from transactions on behalf of the partnership. Neither of these concerns are presented under the facts of the case before us.
¶ 12 In Karle, two partners decided to sell a tavern, which was their partnership asset. One partner accepted an offer without disclosing to the other partner the actual price or the material details of the sale. We affirmed the trial court judgment that the partner committed fraud by failing to disclose his agreement to sell the tavern for $25,000 while representing to his partner that he sold the tavern for $20,000. No such fraud exists in the present case, which would implicate the holding of Karle.
¶ 13 In Bassan, we reversed the trial court's dismissal of an action for an accounting and dissolution of the partnership, and we determined that the general partner was accountable to the partnership for profits realized when it received a markup on land it sold to the partnership without the consent of the partners. The partnership agreement was silent on whether consent was required. In the case before us, the federal district court has determined, as a matter of law, that the sale of partnership assets was made at a fair market value.
¶ 14 In the context of the certified question, the holdings of Karle and Bassan do not conflict. In this case, the partnership agreement does not preclude the sale of the assets; the price paid was fair at the time as a matter of law and no bad faith exists as a matter of law.

CONCLUSION
¶ 15 Based on the narrow issue posed by the certified question, and the procedural posture underlying our analysis, we answer the certified question no.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, RICHARD B. SANDERS, JAMES M. JOHNSON and BOBBE J. BRIDGE, JJ.
MADSEN, J. (concurring).
¶ 16 I agree with the majority that the question posed by the certified question from the Ninth Circuit Court of Appeals should be *826 answered no. The majority is correct that Karle v. Seder, 35 Wash.2d 542, 214 P.2d 684 (1950) and Bassan v. Investment Exchange Corp., 83 Wash.2d 922, 524 P.2d 233 (1974) are factually different and address different issues. In Karle, a partner breached a basic obligation of good faith in failing to disclose the material facts of a consensual transaction. In Bassan, the partner acted in good faith, yet breached a fiduciary duty of loyalty by engaging in unconsented self-dealing at a profit. The difference in outcome is because Bassan involved self-dealing and Karle did not. Self-dealing is prohibited under the common law governing agency law, which was incorporated into the common law of partnerships and later into the Uniform Partnership Act (UPA). Thus, I agree that these two cases are not inconsistent and do not, as the Ninth Circuit stated, "point in different directions." J & J Celcom v. AT & T Wireless Servs., Inc., 481 F.3d 1138, 1142 (9th Cir.2007). However, the majority does not address the fact that Karle and Bassan were decided under the UPA, not the Revised Uniform Partnership Act (RUPA), chapter 25.05 RCW, a point which the Ninth Circuit considered "critical."[1]
¶ 17 As stated by the Ninth Circuit, the central issue here is "the scope of a partner's fiduciary duty of loyalty in the context of a self-dealing transaction that was disclosed but not specifically authorized by the partnership agreement." J & J Celcom, 481 F.3d at 1141. In particular, the Ninth Circuit asked this court to decide whether the language in the partnership agreements authorizing dissolution of the partnership upon majority vote is sufficiently specific to contract around AT & T's duty of loyalty, which encompasses the duty to refrain from self-dealing. In order to provide a useful answer, I believe the court should analyze this question in light of changes in the law since Karle and Bassan were decided. Therefore, I concur.

DISCUSSION
¶ 18 RUPA represents a major overhaul in the nature of the fiduciary duties imposed on partners. There are two general views of the partnership relation: one emphasizes the fiduciary nature of the relationship and the other emphasizes the contractual nature of the relationship.[2] The common law and UPA are based on the fiduciary view, the fundamental principle of which is that partners must subordinate their own interests to the collective interest, absent consent of all the partners. Thus, under the common law and UPA, the duty of loyalty prevented a partner from benefiting, directly or indirectly, from the partnership, more than any of the other partners. The broad approach from the Restatement of Agency, incorporated into partnership law, was that the duty of loyalty required a partner to act solely for the benefit of the partnership in all matters connected to the partnership. This required partners to disgorge any profits made without consent of the other partners, the rule applied in Bassan.
¶ 19 RUPA represents a major shift away from the fiduciary view and toward the "libertarian" or "contractarian" view, by (a) expressly limiting fiduciary duties, (b) sanctioning a partner's pursuit of self-interest, and (c) allowing partners to waive most fiduciary duties by contract. RUPA was intended to bring the law of partnership into the "modern age," to make partnerships more rational, efficient, and stable business entities.
¶ 20 Under UPA, the partner's fiduciary duty was embodied in the following provision:
Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership, or from any use by him of any of its property.
Former RCW 25.04.210(1) (1955).
¶ 21 This was the sole mention of the partner's fiduciary duties and provided the *827 basis for a broad duty of loyalty, as reflected in Bassan.
¶ 22 In contrast, the duty of loyalty in RUPA consists only of three subduties. RUPA provides: "(1) The only fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in subsections (2) and (3) of this section." RCW 25.05.165 (emphasis added).[3]
¶ 23 Our state legislature has adopted RUPA, and under its provisions, fiduciary duties are specifically set forth as explained below. First, a partner has a duty
[t]o account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity;
RCW 25.05.165(2)(a). This section reflects the classic duty of loyalty, carried forward from the UPA, which requires a partner to refrain from taking more than its fair share of profits. In this case, no breach of loyalty occurred under this provision because AT & T only took its pro rata share of the profits, fully disclosed the profits, and sold the assets at fair market value. The Ninth Circuit found that, as a matter of law, AT & T had not been aware at the time of the sale that the partnership assets would later be sold to Cingular Wireless LLC at a great profit. J & J Celcom, 481 F.3d 1138.
¶ 24 Next, a partner has a duty
[t]o refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership;
RCW 25.05.165(2)(b). This duty is drawn from the Restatement (Third) Agency § 8.03 (2006).
¶ 25 Addressing this provision, a law review commentator has stated:
When dealing with the partnership as an adverse party without consent of the partnership, the partner must deal fairly with the partnership and disclose all facts which the partner "knows or should know would reasonably affect the [partner's] judgment." This means that a partner may transact with the partnership for his own benefit so long as (1) the partner makes a full disclosure of all relevant facts to the partnership, (2) the partnership agrees to the transaction, and (3) the partner does not take unfair advantage of the partnership. The important principle is disclosure because even in situations where the court would allow a limit to the duty of loyalty, incomplete or inadequate disclosure results in the application of traditional fiduciary duties. The obligation of disclosure is equally important when a partner seeks to compete with the partnership or has an interest that conflicts with the partnership.
Michael Haynes, Partners Owe to One Another a Duty of the Finest Loyalty . . . or Do They? An Analysis of the Extent to Which Partners May Limit Their Duty of Loyalty to One Another, 37 TEX. TECH L.REV. 433, 445-46 (2005) (emphasis added) (alteration in original) (footnotes omitted).
¶ 26 In this case, these requirements are met. AT & T made full disclosure of all relevant facts, the partnership "agreed" to the transaction, by approving it in compliance with partnership formalities, and AT & T did not take unfair advantage of the partnership, since the partnership was purchased at fair market value.
¶ 27 Next, a partner has a duty
[t]o refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership.
*828 RCW 25.05.165(2)(c). The drafter's comment to this provision provides that
[t]he duty not to compete applies only to the "conduct" of the partnership business; it does not extend to winding up the business, as do the other loyalty rules. Thus, a partner is free to compete immediately upon an event of dissolution under Section 801, unless the partnership agreement otherwise provides.
UNIF. P'SHIP ACT (1997) § 404, 6 U.L.A. 145 cmt. 2 (2001).
¶ 28 Upon dissolution, AT & T had the right to purchase the partnership assets for its own account, without violating the duty of loyalty. Thus, nothing prohibited AT & T from causing the partnership assets to be sold to an affiliated entity.
¶ 29 The act also provides that
[a] partner does not violate a duty or obligation under this chapter or under the partnership agreement merely because the partner's conduct furthers the partner's own interest.
RCW 25.05.165(5).
¶ 30 This language has been characterized as a "rejection of the fiduciary essence of the partnership relationship in favor of the contractarian premise." Allan W. Vestal, Fundamental Contractarian Error in the Revised Uniform Partnership Act of 1992, 73 B.U.L.REV. 523, 535 (1993) (describing the duty of loyalty in the context of fiduciary duties as a whole). This provision starkly contrasts with the duty of loyalty that existed under UPA, which required a partner to disgorge profits obtained from "any transaction" connected with the partnership "without the consent of the other partners." Former RCW 25.04.210(1). Under RUPA, partners need not obtain the consent of their copartners as a precondition for pursuing their own self-interest.
¶ 31 Finally, the act allows that
[a] partner may lend money to and transact other business with the partnership, and as to each loan or transaction the rights and obligations of the partner are the same as those of a person who is not a partner, subject to other applicable law.
RCW 25.05.165(6). The drafter's comment to this provision states:
The rights and obligations of a partner doing business with the partnership as an outsider are expressly made subject to the usual laws governing those transactions. . . .
It is unclear under the UPA whether a partner may, for the partner's own account, purchase the assets of the partnership at a foreclosure sale or upon the liquidation of the partnership. Those purchases are clearly within subsection (f)'s broad approval. It is also clear under that subsection that a partner may purchase partnership assets at a foreclosure sale, whether the partner is the mortgagee or the mortgagee is an unrelated third party. Similarly, a partner may purchase partnership property at a tax sale. The obligation of good faith requires disclosure of the partner's interest in the transaction, however.
UNIF. P'SHIP ACT (1997) § 404, 6 U.L.A. 146 cmt. 6 (2001).
¶ 32 RCW 25.05.165(6) allows a partner to "transact business" with the partnership on the same terms as may a third party. This encompasses the right to purchase partnership assets upon dissolution. A partner does not violate a duty or obligation merely by furthering its own interest and may transact business with the partnership on the same basis as a third party "subject to applicable law."
¶ 33 The partnership may waive the duty of loyalty, unless "manifestly unreasonable," in two ways:
The partnership agreement may identify specific types or categories of activities that do not violate the duty of loyalty.
RCW 25.05.015(2)(c)(i).
All of the partners or a number or percentage specified in the partnership agreement may authorize or ratify, after full disclosure of all material facts, a specific act or transaction that otherwise would violate the duty of loyalty.
RCW 25.05.015(2)(c)(ii) (emphasis added).
¶ 34 Although the partnership agreement does not specifically authorize AT & T to sell *829 the partnership assets to an affiliated entity, it does expressly allow for sale and/or dissolution of the partnership by majority vote. AT & T complied with the partnership agreement and partnership formalities in selling the partnership assets and dissolving the partnership. Upon dissolution, AT & T had the right to purchase the partnership assets for its own account, without violating the duty of loyalty. Nothing prohibited AT & T from causing the partnership assets to be sold to an affiliated entity. Because the certified question and the record indicate that AT & T acted in good faith, paid fair market value, and fully disclosed the nature of its self-dealing transaction, the transaction was not "manifestly unreasonable" within the meaning of RCW 25.05.015(2)(c). Thus, the majority correctly answers the question in the negative. Karle and Bassan, which were decided before the changes in RUPA, do not require a different answer.
NOTES
[1] We deny AWS's motion passed to the merits to strike the appendix attached to J & J Celcom's reply brief and to strike J & J Celcom's constitutional argument from the reply brief.
[1] The legislature adopted RUPA in 1998. LAWS OF 1998, ch. 103. RUPA replaced UPA, which had been in effect in this state since 1945. LAWS OF 1945, ch. 137.
[2] See generally Michael Haynes, Partners Owe to One Another a Duty of the Finest Loyalty . . . or Do They? An Analysis of the Extent to Which Partners May Limit Their Duty of Loyalty to One Another, 37 TEX. TECH L.REV. 433, 449 (2005).
[3] Indeed, commentators have criticized the act's reformulation of the fiduciary duties owed by partners to other partners, describing the revisions as "`a pinched and almost mean-spirited vision of the duty of loyalty'" that is "`a radical degradation of the duty of loyalty generally . . . and the present Act.'" Allan W. Vestal, Fundamental Contractarian Error in the Revised Uniform Partnership Act of 1992, 73 B.U.L.REV. 523, 573-74 (1993) (alterations in original) (footnote omitted) (quoting letter from Melvin A. Eisenberg to Commr's on Uniform Laws (July 27, 1992) (on file with the Boston University Law Review)). Many states have not adopted RUPA and continue to view the duty of loyalty as inherent in the partnership relationship.